RASMUSSEN, Appellant, vs. MILLER, Respondent.
MILLER, Respondent, vs. WESTERN CASUALTY & SURETY COMPANY, Appellant.

*December 7, 1954—January 11, 1955.*

438

For the appellants there was a brief by *Aberg, Bell, Blake & Conrad* and *Carroll Metzner,* all of Madison, and oral argument by *Mr. Metzner.*

For the respondent there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall.*

MARTIN, J.   In its memorandum decision on the motion for rehearing the trial court stated:

"In view of all the statements made by the bailiff herein and by others, before and after the March 26th order, we feel that we now should absolve plaintiff Rasmussen's brother

from any imputation of misconduct in connection with conversation or other contact with one of the jurors. . . .

"Thus, the identity of plaintiff's brother has whittled down—to nothingness, it may be assumed. The content of conversation similarly has been reduced to a void.

"Throughout, however, the four statements by the bailiff, one fact remains: The juror was in contact with a man *after* the case had gone to the jury and it was the *same* man and it was *twice*—once in the basement of the courthouse and once at the hotel.

"We cannot dismiss these two meetings as merely casual. It was not merely meeting once in the hall of the courthouse —which nevertheless was the cause of declaring a mistrial a few years ago by this court, the meeting having been even before the case went to the jury.

"Seeing the same man twice, once in the basement of the courthouse and again at the Park hotel, cannot be regarded as coincidence. The alternative to having to give consideration to the matter, is to completely discredit all the statements, oral, written, and under oath, by a court officer, the bailiff. . . .

"It is conceivable that the bailiff was subject to such strain that he created from pure imagination a situation involving a certain juror and someone, twice, upon two perfectly identifiable occasions. It is only conceivable, however—not probable."

The court ordered a new trial under *State v. Cotter* (1952), 262 Wis. 168, 173, 54 N. W. (2d) 43, where the following language from *La Valley v. State* (1925), 188 Wis. 68, 80, 205 N. W. 412, was set forth:

" 'And so it is with jury trials. In order that the institution be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted not only from all improper influences but from the appearance thereof. It is often said that the jury trial is one of the bulwarks of our liberty. But it will remain so only so long as public confidence in the institution prevails.' "

Appellants contend that no one was prejudiced by the incidents complained of and, under *Oborn v. State* (1910), 143 Wis. 249, 126 N. W. 737, and other authorities, the verdict should not be disturbed. Attention is also called to sec. 274.37, Stats., which provides:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

Whether or not injury or injustice has resulted to the litigants by reason of the conduct of this juror is not our primary concern here. Rather, our concern is with the stigma that attaches to the administration of justice under these conditions. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval of public opinion, must be severely condemned. It is only through the granting of a new trial in situations like this, as well as vigilant efforts by the officers of the courts to prevent such occurrences, that public confidence in the jury system may be preserved.

In making the order appealed from, the trial court satisfied the requirements of sec. 270.49 (2), Stats., by setting forth its reasons for so doing, reasons which are entirely in accord with the views of this court.

*By the Court.*—Order affirmed.