DOSTAL, by Guardian *ad litem,* Appellant, vs. SAINT PAUL-
MERCURY INDEMNITY COMPANY, Respondent.

*March 3—April 9, 1958.*

For the appellant there were briefs by *Doar & Knowles* of New Richmond, attorneys, and *Roberts, Boardman, Suhr, Bjork & Curry* of Madison of counsel, and oral argument by *John Doar* and *Walter M. Bjork*.

For the respondent there were briefs by *Gwin & Fetzner* of Hudson, attorneys, and *Arthur Wickham* and *John J. Ottusch*, both of Milwaukee, of counsel, and oral argument by *Mr. Wickham* and *Mr. John W. Fetzner*.

FAIRCHILD, J. Upon defendant's appeal the questions are, (1) whether the evidence supports the finding that John Magee was negligent as to management and control, and (2) whether there should be a new trial because of alleged misconduct of Mrs. Matzek, a juror. Plaintiff's appeal raises a third question: Did the trial court err in limiting the amount of the judgment so that the two judgments did not exceed the limits of the policy?

(1) *Jury's finding of negligence sustained.* The jury may have accepted the version of the accident related by Marlys Tyler. There was evidence of statements previously made by her, and her affidavit, at least, was in conflict with her testimony in important and material respects. Nevertheless, it was a jury question whether her affidavit or her testimony upon the trial set forth the truth. There was no fact which made her testimony inherently incredible. True, she left to conjecture whether John's lighting of a cigarette for Rita was related to his sudden turn to the right and onto the east shoulder. Her testimony offers no other explanation for that turn. Magee's testimony does make an explanation that is quite adequate, if true. On the other hand, Marlys' testimony explains another matter in a way the jury could have considered more adequate than Magee's. According to Marlys the southbound automobile passed the Magee's car on Magee's right. If true, the southbound car was still north of Magee when he crossed the pavement to the west side in an almost straight course but at an angle with the direction of the highway. The presence of the southbound car might be considered a more-adequate explanation of why John did not apply his brakes or turn his

wheels so as again to follow the highway than any explanation he offered. Defendant's trial counsel appears to have virtually conceded that if the jury believed Marlys, it would find Magee negligent, for his leaving the pavement would then raise an inference of negligence without any explanation which would permit a contrary inference.

We are of the opinion also that even if Marlys' testimony were disregarded, there was a jury question as to negligent management and control after John succeeded in getting out of the path of the oncoming car. His testimony does, of course, explain his sudden turn to the right as a response to an emergency which he did not create. Naturally, having turned to the right, he must turn to the left to approximately the same degree in order to avoid running off the east shoulder. He offered no explanation of why he turned so much to the left that he headed toward the west side of the highway except that his car "jackknifed." He then proceeded in an almost straight course, angling across the pavement. The jury could have found that he traveled some 100 feet in that straight course before reaching the edge of the west shoulder. He did not apply his brakes. He did not turn to the right. According to him, there was no car then preventing him from using any part of the highway to swing back into a safe course. The jury could have found that the angle between the course he pursued and the direction of the highway was in the neighborhood of 30 degrees. In our opinion, even if the actions of the driver of the southbound car precipitated Magee's maneuvers in the first instance, he could be properly found negligent in the manner in which he managed his car after avoiding the southbound car.

There was no evidence that Magee was not an ordinarily prudent driver. Plaintiff guest could meet her burden of showing that he failed to exercise the skill and judgment he possessed by showing that he failed to exercise ordinary care as to management and control. *Heagney v. Sellen* (1956),

*272 Wis. 107, 113, 74 N. W. (2d) 745, 75 N. W. (2d) 801.*
It may be granted that had the southbound car invaded the
east lane and rendered a head-on collision imminent, as
Magee claimed, Magee's response by turning onto the east
shoulder may have been free from negligence as a matter of
law, under the emergency doctrine, even though he had gone
into the east ditch and injured plaintiff. Whether all that
he did after swerving onto the shoulder was a necessary
result of the act by which he avoided the head-on collision
was a jury question. See *Wheeler v. Rural Mut. Casualty
Ins. Co.* (1952), 261 Wis. 528, 533, 53 N. W. (2d) 190.
We cannot say as a matter of law that as Magee crossed the
road at an angle, he did not have a reasonable opportunity
to apply brakes and turn to the right nor that due care did
not call for such actions nor that such operations would not
have avoided the injury.

(2) *The court did not abuse its discretion in disposing of
claim of misconduct of juror.* Four ladies were sitting to-
gether in the courtroom, talking. They were a juror, a mem-
ber of the panel who had been excused, and two witnesses
for plaintiff. The two witnesses were friends and one of
them was a friend of the panel member. The situation
existed for some eight minutes or more at the noon recess
and shortly before the convening of court. This was not
a contact between a party or attorney and a juror. No cir-
cumstance suggested any impropriety in the content of the
conversation. The incident occurred early in the trial. The
trial court fully recognized the importance of jurors' avoid-
ing contacts which would arouse doubts or suspicions. Evi-
dently he viewed the incident as something which it would
be better not to have repeated, but not as threatening the
integrity of the jury or confidence in it in any serious sense.

The cases relied upon by defendant involve situations
which raise more-palpable questions of propriety: *La Valley
v. State* (1925), 188 Wis. 68, 205 N. W. 412,—in a criminal

prosecution where the sheriff was virtually a representative of the plaintiff state, the sheriff gave a juror a ride to a dance; *Shefelker v. First Nat. Bank* (1933), 212 Wis. 659, 250 N. W. 870,—a witness who showed partiality to plaintiff gave a juror a ride home, 35 miles, and the plaintiff and two other witnesses rode along; *State v. Cotter* (1952), 262 Wis. 168, 54 N. W. (2d) 43,—the sheriff told the jurors on a criminal case, after it was submitted to them, that it would not hurt his feelings if they hurried; *Rasmussen v. Miller* (1955), 268 Wis. 436, 68 N. W. (2d) 16,—a juror was seen in contact twice with the same unidentified man after the case had gone to the jury, once in the basement of the courthouse and once at the hotel.

In *Sandeen v. Willow River Power Co.* (1934), 214 Wis. 166, 181, 252 N. W. 706, this court found no abuse of a trial court's discretion in refusing a new trial where a member of the term panel attended the entire trial and "manifested an undue personal interest in favor of one of the attorneys for plaintiff, as well as their cause."

Similarly in the instant case, we find no abuse of discretion either in denying the motion for mistrial immediately after the incident, nor in denying a new trial on that ground after verdict.

(3) *The problem of the damages in excess of policy limits.* After the verdict was rendered, the record would have supported a judgment against defendant for $150,247.50, plus costs. The complaint alleged the issuance of a policy. Although paragraph 4 of the answer was preceded by the word "deny," it was clear enough that the existence of the policy, if not its legal effect, was admitted, and it was alleged generally that it was subject to conditions, exceptions, and limitations. By virtue of the admission of the existence of the policy, plaintiff was relieved from the burden of proving that fact. Defendant thus was directly liable to plaintiff under sec. 85.93, Stats., "such liability not to exceed the amount

named in said bond or policy." The insurer is a party to the contract which contains the limits, and the person seeking recovery ordinarily is not a party to the policy and in most cases does not have ready access to it. We think the burden of pleading and proving the policy limits was upon the insurer. *Masaracchia v. Inter-City Express Lines* (La. App. 1935), 162 So. 221.

When defendant moved, after verdict, that the recovery be limited to the amount of the policy, and asked that it be received in evidence, the issue before the court was whether in the interests of justice the defendant should be relieved from its failure to raise the issue of policy limits more particularly or to offer proof thereof at an earlier time. An order on this subject has been held to be discretionary. *Catura v. Romanofsky* (1954), 268 Wis. 11, 66 N. W. (2d) 693. Defendant did not explain its failure to present the policy at an earlier time and plaintiff asserted that defendant had withheld the policy in order to obtain some advantage in discussions of settlement. In connection with the decision as to the jurisdiction over John Magee, an affidavit of John Doar which had been made part of the record showed that Doar had been informed upon one occasion in April, 1955, that the limits of coverage were $50,000 and his affidavit in opposition to defendant's motion after verdict showed that he had been told later that the limits were $40,000. The trial court was within its discretion in determining that plaintiff's claim with respect to maneuvering for advantage did not render it unjust to permit the defendant to place the policy in the record.

The more-substantial question is raised by a theory which plaintiff first suggested, so far as the record shows, in an affidavit opposing defendant's motion for the receipt of the policy in evidence, and which plaintiff's counsel forcefully argued to this court upon this appeal. This theory is that plaintiff has a cause of action against defendant for the dif-

ference between the recovery based upon the policy and the total amount of plaintiff's damages, as found by the jury. The elements of this cause of action are: (1) Petersen made unauthorized appearances purporting to represent John Magee not only before, but after Magee became twenty-one. (2) Petersen so acted within the scope of his authority as an agent for defendant. (3) Plaintiff relied upon Petersen's appearances as being authorized by Magee. (4) Plaintiff lost rights against Magee as a result of plaintiff's reliance upon the acts of Petersen. This cause of action was never stated in the complaint or any amendment thereto.

Stated in other terms, plaintiff's right may be to obtain from defendant Insurance Company the same relief she could have obtained from its codefendant Magee, had the appearances been authorized by Magee.

In support of plaintiff's theory, plaintiff cites cases suggesting that where a party's rights are prejudiced as a result of the unauthorized appearance of an attorney on behalf of another party, the party damaged may recover damages from the attorney. *Cleveland v. Hopkins* (1882), 55 Wis. 387, 389, 13 N. W. 225; *McEachern v. Brackett* (1894), 8 Wash. 652, 655, 36 Pac. 690, 691; *Everett v. Warner Bank* (1878), 58 N. H. 340, 341. We do not doubt the soundness of this theory. The questions presented by this record are whether the necessary elements have been established as facts in this case and whether, even if established as facts, the plaintiff cannot recover judgment thereon in this action unless and until the complaint be amended so as to state this cause of action, defenses be interposed thereto, and issues, if any, be tried.

Petersen's purported appearances for Magee after he reached age twenty-one are matters of record. We view the order permitting Gwin & Petersen to remove from the record their appearances for Magee as an express determination of their lack of authority to appear for him. We do not inter-

pret the order as determining in any sense that plaintiff could not assert rights against defendant, based upon the fact that the appearances were made. In any event the fact that the appearances were not authorized nor ratified has been established by the order which this court affirmed on the first appeal. Thus the first element of the cause of action above referred to is established beyond question.

We note that at least in part, the other elements mentioned have been made to appear rather persuasively even if they cannot be said to have been conclusively established. Nevertheless, after careful consideration, we have reached the conclusion that if judgment is to be granted plaintiff for the amount of her damages in excess of policy limits, judgment should be based upon proper pleadings, with issues resolved by appropriate proceedings, rather than upon the suggestion made by affidavits on motions after verdict, however persuasive.

Plaintiff should have the opportunity to seek this relief in the present action. If she was deficient in failing to amend her pleadings in the trial court, so was defendant in failing to move more promptly to prove its policy limits. The facts on which plaintiff will probably rely are already before the court, set forth both in the affidavits filed in 1955 in connection with the question of jurisdiction over Magee and in those filed in 1957 in opposition to defendant's motion to place the policy in the record. The extent of plaintiff's injuries has been tried and determined in this action.

We have therefore decided to affirm the present judgment in so far as it adjudicates defendant's liability under its policy. In this wise, plaintiff may, without prejudice to her other rights, accept the money deposited in court by defendant and the judgment upon this cause of action, limited to the policy, may be satisfied. We shall, however, reverse the judgment in so far as it denies plaintiff recovery of the difference between the full amount of her damages and the

recovery under the policy. Plaintiff may amend her complaint by adding a cause of action upon which recovery of the excess may be based. Defendant's pleadings and other proceedings are to follow in the usual course.

One question was raised in the briefs and oral argument on behalf of defendant which we do not now decide, but on which we think comment is appropriate. Up until counsel for defendant raised the question, everyone appears to have assumed that nothing done by plaintiff within two years after May 6, 1953, complied with the notice-of-injury requirement (sec. 330.19 (5), Stats. 1953) and therefore plaintiff could not have brought a new action against Magee after he was let out of the present one. The opinion on the first appeal recites, "No notice of injury has been served." In the dissenting opinion on the first appeal it was pointed out that Magee failed to disaffirm Petersen's acts "until after the two-year period available to plaintiff for giving the notice of injury required by sec. 330.19 (5), Stats., had expired on May 6, 1955. Such notice was not required to be given by the plaintiff unless John disaffirmed the voidable retainer of Petersen." Counsel for defendant now suggests that the complaint personally served on John Magee in February, 1955, within the two-year period constituted a sufficient notice of injury even if it served no other purpose.

Upon oral argument our attention was called to our decision in *Burmek v. Miller Brewing Co.* (1957), 2 Wis. (2d) 330, 86 N. W. (2d) 629. There we held that the mailing of a letter and acknowledgment of receipt thereof constituted sufficient compliance with the statute requiring service of a notice of injury. In the instant case, the complaint was served while Magee was still a minor and under guardianship but it was retained by him until he became of age and later handed to his own attorney.

We do not now decide whether the service of the complaint under these circumstances was sufficient notice of injury, nor

that plaintiff cannot recover from defendant Insurance Company even if it was sufficient so that plaintiff could still proceed against Magee. At least Magee was let out of the present action, and he would not have been if the appearances for him had been authorized as they purported to be. It is arguable—at least we are not prepared to say now to the contrary—that it would be equitable to require defendant to stand in the shoes Magee would have been in had the appearances been authorized, and to accord to defendant, by subrogation, upon payment of that portion of plaintiff's damages which would have been Magee's sole responsibility, whatever right plaintiff still has to proceed against Magee.

At the time of oral argument the question was raised whether the extent to which a judgment creditor could collect or could have collected a judgment against Magee would have any bearing upon the amount plaintiff could recover from defendant Insurance Company in excess of its policy limits. This question had not been briefed and we do not now decide it.

We note, of course, that even if notice of injury has been sufficiently and timely served, the period of limitations will expire in 1959, and plaintiff or defendant, or both, may desire promptly to interplead Magee in this action and seek recovery from him, perhaps alternatively or conditionally.

It may well be said that the procedure we are following is unusual, but the circumstances of this case are also unusual.

*By the Court.*—In so far as the judgment awards plaintiff Rita Dostal recovery from the Saint Paul-Mercury Indemnity Company in the amount of $36,475.95 together with $1,315.49 costs, said recovery being the limits of defendant's liability under the policy of insurance issued by defendant and of record herein, the judgment is affirmed; in so far as the judgment denies plaintiff recovery from defendant of the amount by which $150,247.50, the damages determined by the verdict, exceeds $36,475.95, the judgment is reversed, and

the cause remanded with directions to permit plaintiff, within twenty days after remittitur, to amend her complaint by adding a cause of action for recovery of said excess and for further proceedings according to law, not inconsistent with the opinion herein.