FLETCHER, Plaintiff in error, V. STATE, Defendant in error.

*No. State 10. Argued April 8, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 708.)

For the plaintiff in error there was a brief by *Howard B. Eisenberg,* state public defender, and *Alvin E. Whitaker,* assistant state public defender, and oral argument by *Mr. Whitaker.*

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. The defendant was found guilty of three counts of illegally selling heroin, with the evidence in support of the jury verdict [1] establishing

[1] This court has repeatedly held: " '. . . In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. . . .' " *Ziegler v. State* (1974), 65 Wis. 2d 703, 706, 223 N. W.

three separate sales of heroin by the defendant to an undercover agent of the state department of justice.

*As to the first sale of heroin by the defendant,* the purchaser testified that he and an informant went to the residence of the defendant and that:

"We were admitted to 359 Highland by Mr. Fletcher and we went upstairs. It's an upstairs apartment, and when we got up there, the confidential informant asked Mr. Fletcher if he had any stuff and Mr. Fletcher said, 'A little,' and then he asked me how much I wanted and I said, 'Three-quarters,' meaning three quarter bags of heroin. He got up—we were in the living room—he got up and walked into a room to the right as you come up the stairs and got three tinfoil packets out of a refrigerator and turned and handed them to me and I in turn handed him $75—three 20's, one 10 and one 5—and then we departed."

*As to the second sale of heroin,* eleven days later, the purchaser testified that he returned to the same address, this time alone, and was again admitted by the defendant. The purchaser testified that he was asked what he wanted and that he replied, "Two quarters of jive," that the defendant then left the room and the following then transpired:

"I believe the unidentified Negro male said, 'Billy wants you' or something to that effect. I walked into the bedroom. Mr. Fletcher was sitting at a table in a corner and he had a small pile of white powder in front of him, and he was using a small spoon to put a quantity of this white powder in tinfoil packets; and then Mr. Fletcher asked me what was the last thing I had bought from him, and at this time I said, 'The brown junk,' and he agreed and then finished spooning out two quarter bags and then handed it to me and I handed him $50, which was in two 20's and one 10."

2d 442, quoting *Bautista v. State* (1971), 53 Wis. 2d 218, 223, 191 N. W. 2d 725.

*As to the third sale of heroin,* one month later, the purchaser testified that he and the informant returned to the same address and the following events took place:

"Mrs. Caroline Fletcher answered the door and admitted us and we went upstairs to the upstairs apartment, and Mr. Fletcher asked what we wanted and the confidential informant said, 'A quarter,' and then Mr. Fletcher asked the confidential informant a few questions, personal questions concerning him, and then Mr. Fletcher went into the room to the right and returned with a tinfoil packet; and I handed Mr. Fletcher a $20 bill and a $5 bill, and Mr. Fletcher handed the packet to the confidential informant and he placed it in his right jacket pocket and then we exited the apartment. And, when we returned to my car, the confidential informant handed me the tin packet, tinfoil packet, and I placed it in my left shirt pocket."

*As to sufficiency of the evidence to sustain conviction,* we hold that the evidence supporting the verdict, believed and rationally considered by the jury, was amply sufficient to sustain the guilty verdict as to each of the three counts. The issue raised by the defendant as to the testimony of backup agents who observed the purchaser approach the house of the defendant, goes to the credibility of such witnesses and the weight to be given their testimony—both of which are matters for a jury to determine.[2]

*As to the quantities of heroin being sufficient to sustain conviction,* we hold, as a matter of law, that they were. The chemist who analyzed the contents of the several tinfoil packets testified that the total weight of the matter contained in one packet was two tenths of a gram, five percent of which was heroin, ninety-five percent of which was diluting material. Thus each packet contained ten milligrams or so of heroin, which defend-

[2] *See: Blackwell v. State* (1969), 42 Wis. 2d 615, 627, 167 N. W. 2d 587.

ant contends is too minute to have commercial value or constitute a usable quantity of the drug. Our court follows the majority rule, in sale or possession cases, that ". . . possession of a modicum of an illegal drug is sufficient to bring the defendant within the purview of the statute. . . ."[3] The statutes here involved do not prescribe any minimum amount which must exist,[4] and such amount ". . . need not be a usable amount . . . ."[5] In fact, the quantity of the drug either possessed or sold, we have clearly held ". . . is not material. . . ."[6]

*As to jury instructions on entrapment being here required,* we hold that such instructions would in this case have been entirely inappropriate. A trial court is not required to give a requested instruction unless the evidence reasonably requires it,[7] and here the evidence did not require it. The issue of entrapment does not arise under the circumstances of the three sales as testified to by the purchaser, such testimony, if believed by the jury, establishing that the defendant "was predisposed to unlawfully sell a dangerous drug."[8] Under

---

[3] *State v. Dodd* (1965), 28 Wis. 2d 643, 651, 137 N. W. 2d 465.

[4] Secs. 161.02 (1) and 161.28 (1), Stats. 1969, and sec. 161.41 (1) (a), Stats. 1971.

[5] *State v. Dodd, supra,* footnote 3, at page 651.

[6] *Id.* at page 651, this court adding: ". . . A more liberal interpretation favorable to drug addicts and those illegally dealing in narcotics cannot reasonably be given. . . ."

[7] *Belohlavek v. State* (1967), 34 Wis. 2d 176, 179, 148 N. W. 2d 665.

[8] *State v. Boutch* (1973), 60 Wis. 2d 443, 448, 210 N. W. 2d 730, this court stating: "There is no dispute as to the essential facts in this case. . . .

"Kasabuske [undercover agent for the state department of justice] testified that he approached defendant and asked him if he knew where he could get some weed. Defendant said he would try, and then walked over to another party and returned in about a minute and said he couldn't. He testified that the defendant approached another individual, came back and said he couldn't get any weed, but had some organic mesc to sell.

the circumstances detailed, it is, in fact, "impossible to find any basis upon which to base a claim of entrapment." [9] The defendant disputed the fact of sale, not the circumstances surrounding the sales. As to the first two sales, defendant testified that he was in California on the date of the first sale, and in Madison on the date of the second. As to the third sale, the defendant testified that there was a return of drugs sold earlier that day to defendant by the informant, but no sale by defendant to either undercover agent or informant. With the fact of sale by the defendant denied as to the three occasions involved, the issue of defense of having been entrapped into making a sale does not here arise as to any of the three counts under either the "predisposition" test, the test in this state,[10] or the "governmental conduct" the-

"Kasabuske's testimony establishes that the defendant was predisposed to unlawfully sell a dangerous drug. There was no hesitancy on the defendant's part to solicit marijuana for or to sell organic mesc (LSD) to agent Kasabuske."

[9] *Id.* at page 448, this court holding: "Likewise, the record shows no previous importunities on the part of agent Kasabuske nor refusals on the part of the defendant to purchase or sell dangerous drugs. It is, in fact, impossible to find any basis upon which to base a claim of entrapment. The defendant was not induced by state agents to commit a crime not contemplated by him. The record shows the defendant to be able and willing to supply such drugs without hesitancy on his part whatsoever. The state has proven beyond a reasonable doubt that the accused had a prior disposition to commit the crime." Also holding at page 447: "If, however, the individual is so predisposed to commit the crime such that the intent to violate the law can be said to have originated in the mind of the individual and not the government agent, then the defense of entrapment is inapplicable. . . ."

[10] *Id.* at page 448, this court holding: " 'It is only when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play.' " Quoting *United States v. Russell* (1973), 411 U. S. 423, 93 Sup. Ct. 1637, 36 L. Ed. 2d 366.

ory,[11] up to now rejected by the United States Supreme Court.[12] Where the testimony on behalf of the state as to circumstances surrounding the three sales of heroin does not even suggest entrapment, and the testimony for the defense is that no sales occurred and does not suggest entrapment under the predisposition test, there is neither reason nor right for a trial court to instruct the jury as to entrapment as an affirmative defense. The trial court's refusal to instruct as to entrapment is affirmed.

[11] *See: United States v. Hampton* (8th Cir. 1974), 507 Fed. 2d 832, 834, 835, the court stating: ". . . Appellant recognizes that the Supreme Court has recently rejected a 'Government conduct' theory of entrapment in *United States v. Russell,* 411 U. S. 423, 93 Sup. Ct. 1637, 36 L. Ed. 2d 366 (1973), but he nevertheless argues that such a theory may represent a proper basis for an entrapment defense where, as here, the defendant's version of the evidence discloses that the Government supplied the contraband without which there would be no crime," but holding: "We believe that the Supreme Court's opinion in Russell forecloses us from considering any theory other than predisposition with respect to Hampton's entrapment defense." (The United States Supreme Court has granted review of this decision in *Hampton v. United States* (1975), 420 U. S. 1003, 95 Sup. Ct. 1445, 43 L. Ed. 2d 761. Review pending.)

[12] *United States v. Russell, supra,* footnote 10, at page 433, the majority opinion holding: ". . . This Court's opinions in *Sorrells v. United States, supra* [(1932), 287 U. S. 435, 53 Sup. Ct. 210, 77 L. Ed. 413] and *Sherman v. United States, supra* [(1958), 356 U. S. 369, 78 Sup. Ct. 819, 2 L. Ed. 2d 848] held that the principal element in the defense of entrapment was the defendant's predisposition to commit the crime. Respondent conceded in the Court of Appeals, as well he might, 'that he may have harbored a predisposition to commit the charged offenses.' . . . Yet he argues that the jury's refusal to find entrapment under the charge submitted to it by the trial court should be overturned and the views of Justices ROBERTS and FRANKFURTER, in *Sorrells* and *Sherman,* respectively, which make the essential element of the defense turn on the type and degree of governmental conduct, be adopted as the law.

"We decline to overrule these cases. . . ."

*As to violation of an order segregating witnesses,* we find that no such violation here occurred. On the first day of trial, defense counsel made a motion ". . . that the witnesses be segregated and those that aren't testifying be outside the presence of those that are." The trial court granted such motion. During the opening statement of the prosecutor, defense counsel objected to the presence of witnesses in the courtroom, and they were escorted out. A motion for mistrial based on such claimed violation of the segregation order was denied by the trial court for the reason that ". . . [the prosecutor] had not proceeded far enough in his opening remarks to prejudice [the defendant] in any way. . . ." That appears to be the case, but it is also clear that the scope or limit of the defense motion to sequester extended only to the segregation of witnesses so that ". . . those that aren't testifying be outside the presence of those that are. . . ." Exclusion of all witnesses during the prosecutor's opening statement is not reached by such motion, so worded. A motion to sequester witnesses is not a matter of right, but is addressed to the sound discretion of the trial court.[13] This is an area in which ". . . the supreme court will not intrude in the absence of abuse of such discretion."[14] We do not presume prejudice from a failure to sequester.[15] If the order sequestering witnesses had been overlooked or violated under the circumstances

[13] *Ramer v. State* (1968), 40 Wis. 2d 79, 82, 83, 161 N. W. 2d 209. *See also: Abraham v. State* (1970), 47 Wis. 2d 44, 176 N. W. 2d 349.

[14] *Valiga v. National Food Co.* (1973), 58 Wis. 2d 232, 254, 206 N. W. 2d 377, citing *Andritsch v. Henschel* (1965), 27 Wis. 2d 461, 134 N. W. 2d 426.

[15] *Ramer v. State, supra,* footnote 13, at page 83, citing *Loose v. State* (1903), 120 Wis. 115, 97 N. W. 526; *Zoldoske v. State* (1892), 82 Wis. 580, 52 N. W. 778.

here present, we would not here find ground for reversal.[16] However, since the motion, as phrased, did not include exclusion of witnesses from the courtroom during the prosecutor's opening statement, we find no basis for claim of error.

*By the Court.*—Judgment and order affirmed.

---

[16] *See: Waite v. State* (1973), 57 Wis. 2d 218, 224, 203 N. W. 2d 719, this court there holding: ". . . As to such minor discrepancies, the trial court's failure to sequester the two state's witnesses, if error at all, was certainly harmless. It is not grounds for granting a new trial."