NYBERG, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–716–CR. Argued December 2, 1976.—*
*Decided January 18, 1977.*
(Also reported in 249 N. W. 2d 524.)

For the plaintiff in error the cause was argued by *Melvin F. Greenberg,* assistant state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J. The defendant contends that the trial court abused its discretion in (1) not striking three jurors for cause because of bias shown at the voir dire

examination of the jurors, (2) in failing to grant a motion for mistrial because the principal state witness conversed with two jurors after they were sworn but before testimony was taken, and (3) for failure to grant a motion for mistrial because the state's witnesses violated a sequestration order. The defendant also contends he is entitled to a new trial in the interest of justice.

The facts which gave rise to the prosecution are as follows:

The defendant Nyberg and the principal prosecution witness, Harold Lofkvist, both in their twenties, had lived in the Hayward area most of their lives. They had gone to grade and high school together and had seen each other, intermittently, since that time. Lofkvist testified that during the last five years he had not seen the defendant on a social basis and was not a close friend. The defendant testified he had seen Lofkvist several times and on a friendly and social basis.

On February 16, 1975, by chance, Lofkvist met Nyberg in a bar in Cable, Wisconsin. Lofkvist asked the defendant Nyberg "if he could get some stuff for me." Nyberg told Lofkvist he could but not right then and that it was available in the Barnes area. Lofkvist next saw Nyberg a few days later at the Northern Lights Steakhouse in Lenroot, Wisconsin, where Lofkvist tended bar. Lofkvist and Nyberg went to a back room and Nyberg sold Lofkvist three bags of marijuana for $45.

Shortly after this transaction Lofkvist went to the sheriff's office, gave the marijuana to Deputy James Poppe and stated he had obtained it from Nyberg. Prior to the purchase Lofkvist talked to Deputy Poppe about the defendant. Lofkvist supplied information to the sheriff's department on at least one occasion and was instructed on what to do when purchasing marijuana. Although Lofkvist was not paid as an informant, he was reimbursed the $45 paid to Nyberg.

The defendant Nyberg admitted selling the marijuana. His defense at the trial was entrapment, based upon his claimed friendship with Lofkvist and Lofkvist's arrangement with the law enforcement officers.

On voir dire examination the three challenged members of the jury panel admitted knowing Deputy Poppe. Mr. Trettin stated he grew up with Poppe and considered him a close friend. He later qualified this statement saying he didn't meet socially with the deputy but only casually on the street. Trettin stated he would not be embarrassed to make a decision that showed disbelief of Poppe's testimony. Mr. Henriksen also stated that he was a very good friend of Poppe but that it would not be embarrassing to make a decision contrary to that which Poppe was advocating. Mr. Tainter knew Poppe and was a retired deputy sheriff. The defendant contends it was an abuse of discretion not to strike the above mentioned members of the jury panel for cause. It is argued this is especially true because five members of the panel were excused by the court because of their friendship with the defendant's family. However, these prospective jurors stated it either would or might be embarrassing to find against the defendant.

■■ *Nolan v. Venus Ford, Inc.*, 64 Wis.2d 215, 218 N.W.2d 507 (1974), extensively discusses the dismissal of prospective jurors for cause. There must be more than a suggestion of partiality. *Id.* at 222, 218 N.W.2d 510. Citing *Kanzenbach v. S. C. Johnson & Son, Inc.*, 273 Wis. 621, 79 N.W.2d 249 (1956), the court noted with approval that an appropriate question for a panel member is whether he or she believed he or she could decide the case fairly on the evidence.[1] A trial court must honor challenges for cause whenever it may reasonably suspect that circumstances outside the evidence may create bias or appearance of bias. *Nolan, supra* at 223, 218 N.W.2d

[1] *State v. Nutley*, 24 Wis.2d 527, 129 N.W.2d 155 (1964).

at 511. These guidelines are equally if not more important in a criminal trial where the accused may eventually be deprived of his or her liberty.

The trial judge conducted a thorough voir dire and this was supplemented by counsel. Panel members who stated they could not decide the case on its merits were dismissed. Some of those dismissed were friends of the defendant's family. Another was dismissed because he was a friend of Deputy Poppe and Mrs. Lofkvist. One member was dismissed because she had discussed the case with someone and formed an opinion concerning the innocence or guilt of the defendant. Because one woman had children who were involved in a marijuana case she asked to be, and was, excused. Panel members were dismissed not because they were or were not friends of the defendant or a witness but because they believed they could not decide the case fairly on the evidence. Just as some panel members were not discharged for cause even though they knew Deputy Poppe, others were not discharged for cause although they were acquaintances of the defendant's family.

The trial court used the correct standard for dismissing panel members for cause. Whether a juror is to be dismissed for cause rests within the sound discretion of the trial court.[2]

The number of jurors available had been exhausted. By agreement, the defendant exercised his right to four peremptory challenges. The state waived one and struck three. We conclude there was no abuse of discretion in impaneling the jury.

At the recess, after the impaneling of the jury but before the opening statement had been made, Lofkvist went up to and engaged two jurors in conversation, while they were in a corridor. The district attorney

[2] *Nolan, supra* at 220, 218 N.W.2d 510; *Grace v. Dempsey*, 75 Wis. 313, 320–21, 43 N.W. 1127, 1129 (1889).

immediately intervened and informed Lofkvist not to talk to members of the jury.

The defendant's counsel made a motion for a mistrial. The trial judge examined the jurors in chambers concerning the incident and afforded defendant's counsel a right to participate in the examination. The jurors stated that they did not know Lofkvist nor that he was to be a witness. Lofkvist told one of the jurors that he went to school with his son and a brief discussion ensued about armed service compensation. Nothing was said that in any way related to the trial which was about to commence.

Prior to the recess the trial court had extensively admonished the jury not to discuss the case with anyone. The trial judge concluded that the brief conversation between Lofkvist and the two jurors had not prejudiced either the defendant or the state and denied the motion.

The defendant argues that his whole defense of entrapment was dependent upon whether the jury believed him or Lofkvist as to the degree of friendship that existed between them prior to the sale of marijuana. The defendant claimed he believed he and Lofkvist were good friends and that he was induced to purchase the marijuana for him because of that friendship, not knowing that in fact Lofkvist was a police informant who was trying to persuade him to violate the law.[3] He further argues Lofkvist attempted to ingratiate himself with the jurors which could affect the jurors' evaluation of the credibility of the two witnesses.

The defendant places much reliance on *La Valley v. State*, 188 Wis. 68, 205 N.W. 412 (1925), which stood

---

[3] The trial court did instruct the jury: "If you are satisfied from the evidence in this case, under the instructions I have given you, that the defendant was entrapped into committing the crime charged by an appeal to friendship, and that it was through friendship that the purchase and delivery was made, you must find him not guilty."

for the proposition that a jury trial must not only be devoid of any improper influences by officers of the state but also from any appearance thereof.

In *Shelton v. State*, 50 Wis.2d 43, 50–51, 183 N.W.2d 87, 92 (1971), we stated: "Several of our earlier cases are consistent with this rule; however, the rule has been relaxed to the extent that there must be some showing of probable prejudice."[4]

 The conduct of the witness Lofkvist in his attempt to ingratiate himself with two of the jurors was improper. It is improper for any witness to attempt to ingratiate himself with the jury—more so if that witness is an officer of the state and an important witness. The question remains—did his misconduct result in probable prejudice of the jury? The state argues it is just as probable that the reaction of the jury was unfavorable to Lofkvist and that it examined his testimony more critically.

 The trial judge was aware of the standard to be applied. He examined the jurors, noted the conversation was unsolicited by them and unrelated to the case, and that the jurors did not know Lofkvist or that he was to be a witness. In the exercise of its discretion the trial court, based upon the judge's examination and observation of the jurors, concluded neither party was prejudiced by the incident. The trial judge, from his face to face confrontation, is in a much more favorable position to fairly make this determination than is a reviewing court from the examination of an inanimate record. From our review of the record we conclude the trial court applied the right standards and procedures and can find no abuse of discretion.

---

[4] *See: Seitz v. Seitz*, 35 Wis.2d 282, 151 N.W.2d 86 (1967); *Cullen v. State*, 26 Wis.2d 652, 133 N.W.2d 284 (1965); *Dostal v. Saint Paul-Mercury Indemnity Co.*, 4 Wis.2d 1, 89 N.W.2d 545 (1958).

Before the first witness was sworn the court ordered all witnesses to be sequestered. Subsequent to Lofkvist's testimony, but before Poppe's testimony, defense counsel moved for a mistrial on the grounds that the prior witness, Lofkvist, talked with Poppe for almost ten minutes prior to Poppe's testimony. Mr. Yackel, the district attorney, admitted he was talking to Poppe, in the presence of Lofkvist, about Lofkvist's prior testimony. The trial judge denied the motion for mistrial, indicating that if there was a showing that this was an attempt to "patch up testimony," he would consider declaring a mistrial.

*Loose v. State,* 120 Wis. 115, 97 N.W. 526 (1903), is the controlling precedent for this case. In *Loose* the trial court exercised its discretionary authority to exclude witnesses from the courtroom but later allowed witnesses who violated the order to testify. The court indicated that if the defendant was prejudiced by this violation and if the party calling the witness was a guilty participant in the violation, the witness would not be competent to testify, and to allow such testimony would be reversible error. *Id.* at 121, 97 N.W. at 528. No prejudice was found in allowing the witnesses to testify after violating the sequestration order.

The state cites to the court the cases of *Fletcher v. State,* 68 Wis.2d 381, 228 N.W.2d 708 (1975), and *Ramer v. State,* 40 Wis.2d 79, 161 N.W.2d 209 (1968). They dealt primarily with the discretion of a court to order sequestration. In *Ramer* the trial court did not order the witnesses sequestered, and in *Fletcher* this court found there was no violation of the sequestration order. The *Fletcher* court did note that if there had been a violation of the order it would not have been grounds for reversal. *Fletcher, supra,* at 388–89, 228 N.W.2d at 712. This was a reflection of the rule of *Loose* that unless a party is prejudiced by the violation of the order there will not be a reversal.

■ In this case there was a violation of the order. While Poppe did not hear Lofkvist testify, he discussed the testimony with the district attorney in the presence of Lofkvist prior to his own testimony. "Sequester" means to set apart or separate. The purpose of a sequestration order is to assure a fair trial, and more specifically, to prevent the shaping of testimony by one witness to match that given by other witnesses.[5]

The conference between the district attorney, Lofkvist and Poppe prior to Poppe's testimony could well have been an effort to shape testimony of one witness to match that of another. The conference brought together witnesses that had been ordered separated.

When the motion for mistrial was made, the trial judge indicated that he would "see what happens." Until he heard more which would indicate the defendant was prejudiced he denied the motion. Poppe's testimony primarily concerned his arrangements with Lofkvist and the chain of custody of the marijuana and not the degree of acquaintance or friendship between Lofkvist and the defendant.

■ After observing the testimony of Deputy Poppe he did not grant the motion. He had the opportunity to view the testimony and demeanor of the witness and determine whether the witness was "shaping" his testimony to match that of Lofkvist. It was the trial court's order that was violated. Because the party calling the witness participated in the violation, the trial court could have disqualified the witness for violating the order,[6] but if no prejudice resulted from the violation it is not error to deny a motion for mistrial or to allow the witness to testify.[7] Whether a witness is to be permitted to testify

---

[5] *United States v. Strauss*, 473 F.2d 1262, 1263 (3d Cir. 1973).

[6] *United States v. Torbert*, 496 F.2d 154, 157–58 (9th Cir. 1974), cert. denied, 419 U.S. 857.

[7] *Loose v. State*, 120 Wis. 115, 121, 96 N.W. 526, 528 (1903); *United States v. Miller*, 499 F.2d 736, 742 (10th Cir. 1974).

is generally left to the sound discretion of the trial court.[8] Noncompliance with the order can lead to a contempt citation.[9]

 The defendant argues that if the witnesses had not gotten together to discuss testimony there might have been discrepancies in their stories and the jury might then have doubted Lofkvist's credibility, and if it doubted his credibility it might have believed the defendant concerning his claim of friendship, and if it believed that the defendant and Lofkvist were good friends it might have believed that the defendant was entrapped—that is, that he had no predisposition to commit the crime but was enticed because of friendship to commit the crime. This is a possibility, but it is too remote a possibility for this court to hold that the trial court abused its discretion in allowing Poppe to testify. No actual prejudice was demonstrated, therefore the trial court did not err nor abuse its discretion in allowing testimony and not declaring a mistrial.

We have concluded that the trial court did not commit prejudicial error nor did it abuse its discretion in denying the various motions of the defendant. The defendant nonetheless requests that this court grant a new trial in the interest of justice primarily upon the ground that there probably has been a miscarriage of justice.

 The defendant does not challenge the sufficiency of the evidence nor could he seriously do so. He admitted he sold and delivered the controlled substance prohibited by law. His defense was entrapment based upon his claim that he was a friend of the principal witness who turned out to be a police informer. A review of the record can easily leave one with the impression that the state's chief witness was a zealous witness and engaged in some

---

[8] *United States v. Suarez*, 487 F.2d 236, 238 (5th Cir. 1973), *cert. denied*, 415 U.S. 981.

[9] *Loose v. State*, 120 Wis. 115, 122, 96 N.W. 526, 528 (1903); *United States v. Miller*, 499 F.2d 736, 742–43 (10th Cir. 1974).

impropriety during the trial. The trial court, which is in a much more favorable position than this court, was aware of these improprieties and carefully sought to determine if any prejudice resulted. While a defendant is most certainly entitled to a fair trial, he is not necessarily entitled to a perfect trial. It can be said there are very few, if any, perfect trials. In our opinion he had a fair trial.

We do not believe there has been a miscarriage of justice nor that a new trial would produce a different result.[10] The request for a new trial is denied.

*By the Court.*—Judgment and order affirmed.

---

[10] *Lock v. State*, 31 Wis.2d 110, 142 N.W.2d 183 (1966); *Jones (George Michael) v. State*, 70 Wis.2d 41, 233 N.W.2d 430 (1975).