COURT OF APPEALS
DECISION
DATED AND FILED

October 4, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP450-CR**

Cir. Ct. No. **2021CT560**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARQUS G. PHILLIPS,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed*.

¶1 GROGAN, J.[1] Marqus G. Phillips appeals a judgment entered after a jury found him guilty of operating a motor vehicle while intoxicated, third

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

offense (OWI), contrary to WIS. STAT. § 346.63(1)(a). Phillips claims the trial court erroneously exercised its discretion when it denied his motion for a mistrial after the trial court found a State witness violated the sequestration order but that the violation did not prejudice Phillips. This court affirms.

## I. BACKGROUND

¶2 In the early morning hours of May 29, 2021, police officers Jacob Schwartz and Sarah Pauer were dispatched to a home on Prospect Avenue in Oshkosh in response to a "suspicious vehicle complaint." The caller had contacted police and reported that Phillips, whom she had met and spoken with earlier in the day, "pulled up to her house in a red Pontiac … and was walking around her house." When the officers arrived, they saw the red Pontiac parked on the street and noticed Phillips was asleep in the driver's seat of another car in the driveway. The officers made contact with Phillips and observed signs of intoxication, including a strong odor of alcohol, slurred speech, and glassy eyes. According to the officers, Phillips acknowledged he was in no condition to drive, and after declining the officers' offer to drive him somewhere, Phillips walked away.

¶3 A short time later, the same caller contacted police again because Phillips was back at her house "knocking on her door and yelling." While speaking with dispatch, the caller reported that Phillips drove away in his red car before officers could respond. When police returned to the home, they found a wallet that appeared to belong to Phillips on the ground near the door. The officers found an identification card for Phillips's wife, Rachel, inside the wallet and were able to reach her by telephone. She offered to meet the officers at a nearby Kwik Trip to retrieve the wallet. As the officers were pulling into the

Kwik Trip, they both saw the same red car that had been parked at the Prospect Avenue home pulling into and parking in the Kwik Trip parking lot. When the officers approached the red car, Phillips was in the driver's seat. Phillips denied driving his car and insisted the driver was inside the Kwik Trip. Officers again observed signs of intoxication from Phillips, including a strong odor of alcohol, slurred speech, and glassy eyes. Phillips refused to do field sobriety tests, and police arrested Phillips for OWI.

¶4      The State subsequently charged Phillips with OWI, third offense, contrary to WIS. STAT. § 346.63(1)(a), and Phillips entered a not guilty plea. His case was tried to a jury in March 2022. The trial court ordered all witnesses sequestered, but the prosecutor forgot to tell his witnesses about the sequestration order. The only witnesses to testify at the trial were Schwartz and Pauer. Schwartz testified first while Pauer waited in the hallway outside the courtroom. After sitting on a hallway chair for about three and one-half hours, Pauer stood up and leaned against the courtroom door or the wall near the closed courtroom door. A court official observed this and told Pauer she could not stand there, and she thereafter moved to the other side of the hallway and leaned against the other wall. Based on the hallway video obtained later, which shows Pauer near the courtroom door for approximately two minutes, as well as its own notes regarding the timing of certain trial testimony, the trial court determined that Pauer stood up after Schwartz had completed his direct examination.

¶5      During his trial testimony, Schwartz told the jury that he was sent to the home on Prospect Avenue in response to a complaint, saw the red car parked on the street there, noticed Phillips asleep in a different car in the driveway, and observed signs indicating Phillips was intoxicated. Schwartz told the jury that he saw Phillips walk away but that a short time later, the police were called back to

the house. During the return to the house, the police found Phillips's wallet on the ground near the front door of the home, contacted Rachel, whose identification was found in the wallet, and Rachel agreed to meet the officers at Kwik Trip so they could give her the wallet. When Schwartz arrived at Kwik Trip, he saw the red car "pulling into Kwik Trip" just before he did. He confirmed that he did not see anyone get in or out of that red car and that when he approached the car moments later, Phillips was in the driver's seat. Much of Schwartz's testimony was supplemented with Schwartz's body camera video, which was shown to the jury and introduced into evidence. Schwartz testified that based on his observations, Phillips "was intoxicated to the point that it would be unsafe for him to be operating a motor vehicle."

¶6 Pauer testified next. She also wore a body camera during her interactions with Phillips, and the jury saw some of that footage during her testimony. Pauer testified about finding Phillips "passed out or asleep in the driver's seat of the vehicle … parked in the [Prospect Avenue] driveway" and told the jury that Phillips seemed intoxicated because "[h]e was slurring his words" and "there was a strong odor of intoxicants emanating from the vehicle." When the prosecutor thereafter attempted to show more of Pauer's body camera video, the defense lawyer objected to it being repetitive. The trial court asked if Pauer's video contained "anything different" than Schwartz's video, and the prosecutor responded: "No. Just shows the defendant again." When asked whether she believed it was safe for Phillips to drive, Pauer answered negatively and explained that she "could smell an odor of intoxicants coming from his person. His speech was slurred. He was a little unsteady on his feet. And then he was found asleep in the car."

¶7 The prosecutor then asked questions about the officers finding Phillips's wallet when they returned to the Prospect Avenue house a second time and about contacting Rachel and agreeing to meet her at Kwik Trip to return the wallet. When Pauer was shown her body camera video from the Kwik Trip portion, she confirmed that she "saw the [red car] pull into the Kwik Trip," she kept her eyes on it as it parked, and that she did not see anyone get in or out of the car. She also testified that Phillips was in the driver's seat when the officers approached the red car.

¶8 Pauer told the jury that the encounter at Kwik Trip was less than one hour after they first encountered Phillips at the Prospect Avenue house and that she did not think it was safe for Phillips to be driving because "he was still slurring his words, he still had an odor of intoxicants emanating from his person, glassy eyes." When asked on cross-examination whether she heard Phillips say "the driver was in the Kwik Trip[,]" Pauer said she could "not recall."

¶9 The defense did not call any witnesses. The jury returned a guilty verdict, and the case proceeded directly to sentencing. The trial court withheld sentence, put Phillips on probation for twelve months with forty-five days in jail as a condition of probation, and imposed a fine and two years' revocation of his driver's license.

¶10 A short time after the sentencing, the trial court called all parties back into the courtroom because a judicial assistant reported she had seen Pauer "leaning her head against the door" outside the courtroom while Schwartz was testifying. The assistant advised the trial court that she told Pauer she "couldn't listen to the testimony," after which Pauer "walked away." Defense counsel saw this as "a basis for a mistrial[.]" The prosecutor argued that any sequestration

violation could not have caused prejudice because "so much of this case was caught on tape," and therefore "the idea of contamination of [Pauer's] testimony being conforming to [Schwartz's] testimony is so unlikely as to not be a basis for a mistrial."

¶11 The trial court stayed execution of the sentence to allow both sides to file briefs and to hold an evidentiary hearing where Pauer could testify as to what she heard. The court held the evidentiary hearing in May 2022, and both officers testified. Pauer testified that the prosecutor did not tell her about the sequestration order and that when she was in the hallway, she "could hear all the body worn camera footage that was played" and "all of the prosecution's questions and all of the defense's questions." She also said that she could hear Schwartz speaking but "couldn't hear the exact answers that he was saying."

¶12 Pauer explained that after three and one-half hours of sitting, she stood up because her back was hurting. She admitted she leaned against the courtroom door or the wall near it, but she testified that this position did not change what she could hear from the courtroom. After a court official told her she could not stand there—that she "was not allowed to be listening"—she "went and sat back down."

¶13 The prosecutor then showed Pauer video from the hallway on the date of the trial, which showed Pauer stand up and lean against the courtroom door at 11:01 a.m. This video was admitted. On cross-examination, defense counsel showed Pauer an e-mail exchange between Pauer and the prosecutor about what she heard while she was in the hallway on the date of trial. In those e-mails, Pauer wrote:

> In regards to this, the court room was extremely loud and everything that was being said (all of the videos that were played, the questions from you, and the questions from the defense) could be heard by anyone in the hallway.
>
> I had been sitting in a chair or on the bench outside the court room for 3.5 hours at that time and needed to stand up as my back was hurting, so I stood up and leaned against the wall by the door.
>
> I could hear the court room the exact same where I was standing as to where I was sitting. I can see how it looked bad that I was standing there, but there was no ill intent in me doing so. You can speak with Officer Schwartz as well that the sound in the hallway was clear just sitting down outside.
>
> I spoke with LT Ziegler about this and he asked what you would like me to put in my supplemental report in regards to this. I could hear the questions being asked, but not his responses as his mic was either turned down to a reasonable volume or he was speaking quietly.

¶14 Schwartz also testified that when he was in the hallway, he "could hear quite a bit of what was being said from the courtroom." He said he "could hear specific words and even full sentences from many different voices within the courtroom." When asked if he could "hear enough" to understand what was happening, he responded he could "mostly" just hear "[b]its and pieces[.]"

¶15 The trial court ruled that although there was a violation of the sequestration order, specifically when Pauer was "out in the hallway with [her] ear against the door listening to another officer testify[,]" the violation was not prejudicial. In making that finding, the trial court explained that this case contained substantial video evidence, which somewhat negated the biggest risk of the officers conforming their respective testimony that "nobody else got out of that vehicle[.]" The trial court also found it significant that Schwartz testified to that specific fact (that no one got out of the vehicle) before his cross-examination began at 11:00 a.m. and that Pauer did not stand up and lean against the door until

7

shortly after 11:00 a.m. Based on this timing, the trial court said it could not find prejudice and, therefore, denied the mistrial motion and lifted the stay on the sentence.

¶16    Phillips now appeals.

## II. DISCUSSION

¶17    Phillips contends that he did not receive a fair trial because Pauer violated the sequestration order, which he did not find out about during the trial, and that the trial court erroneously exercised its discretion in finding the violation was not prejudicial. He asks this court to "reverse his judgment of conviction and remand this case to the circuit court with directions to declare a mistrial and grant [him] a new trial."

¶18    Appellate courts apply the deferential standard of review when examining a trial court's decision on a mistrial motion, and this court will affirm unless the trial court erroneously exercised its discretion. *State v. Debrow*, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114. "When faced with a motion for mistrial, 'the circuit court must decide, in light of the entire facts and circumstances, whether ... the claimed error is sufficiently prejudicial to warrant a mistrial.'" *Id.* (omission in original; citation omitted).

¶19    "The circuit court properly exercises its discretion when it examines the relevant facts, applies the proper legal standard, and uses a rational process to reach a reasonable conclusion." *State v. Richard J.D.*, 2006 WI App 242, ¶5, 297 Wis. 2d 20, 724 N.W.2d 665. If the trial court does not sufficiently explain its reasoning, the appellate court may search the record to determine whether the record supports the trial court's discretionary decision. *Steiner v. Steiner*, 2004

WI App 169, ¶18, 276 Wis. 2d 290, 687 N.W.2d 740. The trial court's factual findings "will not be disturbed unless they are clearly erroneous. A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Lowe's Home Ctrs., LLC v. City of Delavan*, 2023 WI 8, ¶25, 405 Wis. 2d 616, 985 N.W.2d 69 (internal citation omitted). "The weight and credibility to be given to testimony is uniquely within the province of the trial court." *Noble v. Noble*, 2005 WI App 227, ¶16, 287 Wis. 2d 699, 706 N.W.2d 166.

¶20 As noted, the trial court found under the facts and circumstances presented in this case that Pauer's violation of the sequestration order was not prejudicial, and therefore, a mistrial was not warranted. In reviewing the Record, this court concludes the trial court did not erroneously exercise its discretion in making its decision because its findings are not clearly erroneous, it applied the correct law, and it reached a reasonable determination based on the totality of the facts and circumstances in this particular case.

¶21 Having reviewed the Record, it is clear that the Record supports the trial court's specific findings regarding prejudice.[2] The trial court considered what

---

[2] Phillips asserts that the trial court's statement that the video evidence is "overwhelming" is clearly erroneous. He points out that the video evidence did not actually show Phillips *driving* his car, making the trial court's description of "overwhelming video evidence" erroneous. This court is not convinced that the trial court's statement is clearly erroneous. This court reads the trial court's words about the "overwhelming video evidence" to mean that a substantial portion of the prosecutor's case included showing the jury the body camera video evidence. That evidence showed the encounter with Phillips at the Prospect Avenue house and showed Phillips exiting from the driver's seat while the car was parked at Kwik Trip. The video also showed the jury how intoxicated Phillips appeared. This court takes the trial court's reference to "overwhelming video evidence" to refer to the extensive amount of video that was played for the jury and introduced into evidence. This is certainly not a clearly erroneous statement.

Pauer heard and did not hear and that Schwartz's "compelling testimony," which was corroborated by extensive "video evidence[,]" was already complete before Pauer stood up and leaned against the door.[3] It expressed that it could not find Pauer's actions prejudicial, given Schwartz's direct testimony and the extensive video evidence involved in this case. Moreover, both officers had body camera video that was substantially the same. In fact, the videos were so similar that the trial court excluded the prosecutor's attempt to present much of Pauer's body camera footage during her testimony because the jury had already been shown Schwartz's body camera footage during his testimony.

¶22 Although not specifically mentioned by the trial court, the Record also demonstrates additional facts that support the no-prejudice finding. First, at the evidentiary hearing, Pauer testified consistently with the e-mail that she sent to the prosecutor: While in the hallway, she could hear the body camera footage being played and the questions being asked, but she could not hear Schwartz's specific answers.[4] Pauer also stated in her e-mail and in her testimony that she could not hear any better when she stood up—she could hear the same both when she was sitting and when she was standing. Although sequestered witnesses

---

[3] Phillips also criticizes the trial court for noting and relying on the timing of Pauer's violation. He contends that the violation occurred during the entire time Pauer was in the hallway, not just when she was standing near the door. This court agrees with Phillips about the purpose of a sequestration order and that this purpose of excluding a witness from the courtroom is wholly defeated if a witness sitting in the hallway outside the courtroom hears everything that is going on inside the courtroom. That is not exactly what happened here, given Pauer's testimony that she did not hear Schwartz's responses, but the volume of video played in the courtroom and the volume of the attorneys' questions is something that trial courts must be aware of in respect to sequestration orders. Nevertheless, under the facts and circumstances presented in this case, the sequestration violation did not cause prejudice.

[4] Although the trial court did not explicitly say that it found Pauer's testimony credible, this finding can be inferred because it supports the trial court's findings. *See Becker v. Zoschke*, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977).

should not hear *anything* that occurs in the courtroom, the greatest danger would be to hear a witness's answer to each question. The Record demonstrates that was not what occurred.

¶23    Second, these officers were working together in the early morning hours during their encounter with Phillips. Both had their own body camera video from the incident, both observed essentially the same sequence of events, and they arrived at the Prospect Avenue house and Kwik Trip at the same time.[5] The video played for the jury showed that Phillips was passed out in a car parked in the driveway at the Prospect Avenue house, and he is then shown on the video assuring the officers that he would not be driving his car, which was parked on the street. The video also showed Phillips exiting from the driver's seat of the car after it parked at the Kwik Trip. The jury saw this sequence of events from watching the body camera footage, and it would have been incredible for the jury to instead believe Phillips's version of events—that within moments of Phillips's car pulling into and parking at the Kwik Trip in the early morning hours, another person exited the driver's seat and Phillips then immediately moved into the driver's seat. Moreover, during the entire time the officers were interacting with Phillips, removing him from the car, and asking him to do field sobriety tests, no one came out of the Kwik Trip claiming to be the driver.

¶24    This court, therefore concludes that the trial court's decision here was reasonable based on its examination of all the facts and circumstances of this case and that the trial court correctly applied the law when it concluded that

---

[5] Each officer was in a different squad car, but the video shows them arriving at both places at the same time.

although Pauer violated the sequestration order by standing by the courtroom door, this violation was not prejudicial and therefore did not warrant a new trial. Accordingly, the trial court did not erroneously exercise its discretion when it denied Phillips's mistrial motion.[6]

¶25 As a final note, Phillips also argues that because the sequestration violation was not discovered during the trial, he was deprived of other remedies—such as striking Pauer's testimony or requesting a curative jury instruction—that may have otherwise been available had the violation been discovered while the trial was ongoing. *See Nyberg v. State*, 75 Wis. 2d 400, 409, 249 N.W.2d 524 (1977), *overruled on other grounds by State v. Ferron*, 219 Wis. 2d 481, 579 N.W.2d 654 (1998); *State v. Sigarroa*, 2004 WI App 16, ¶¶24-26, 269 Wis. 2d 234, 674 N.W.2d 894. While this may be true, it does not alter the trial court's prejudice determination, which this court has concluded was not erroneous.

¶26 The Constitution does not guarantee an error-free trial. *United States v. Hasting*, 461 U.S. 499, 508-09 (1983) ("the Court has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations"). Here, Phillips received a fair trial despite the sequestration violation because the violation did not cause him prejudice.

---

[6] This court expects that the prosecutor who failed to inform his witnesses about the sequestration order will take steps to ensure that this mistake does not happen again. And, this court encourages trial courts to take precautions with respect to witnesses in the hallway being able to hear what is taking place inside the courtroom. Sequestration orders are an important part of ensuring fair trials, and although there was no prejudice found in this particular case, that might not always be the result. *See State v. Evans*, 2000 WI App 178, ¶6, 238 Wis. 2d 411, 617 N.W.2d 220 (noting that "[t]he purpose of sequestration is to assure a fair trial" and to prevent witnesses from changing their testimony to match testimony of other witnesses).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.