STATE of Wisconsin, Plaintiff-Respondent,

v.

Gregory L. GESCH, Defendant-Appellant.†

Court of Appeals

*No. 90–1328–CR. Submitted on briefs January 8, 1991.—Decided June 20, 1991.*

(Also reported in 473 N.W.2d 152.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Richard D. Martin,* assistant public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, with *David J. Becker,* assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

GARTZKE, P.J. Gregory Gesch appeals from a judgment of conviction on one count of criminal trespass to a medical facility, sec. 943.145, Stats. The issue is whether the judgment should be reversed because the trial court denied the defendant's motion to excuse from the jury a brother of the state's police witness. We affirm the judgment.

Gesch was arrested because of an incident at an abortion clinic. Madison Police Officer David Wineke was one of two officers dispatched to the clinic. The prosecution listed him as a potential witness at trial. When the jury was being selected, prospective juror Daniel Wineke stated that Officer Wineke was his brother. In response to defense counsel's questioning, juror Wineke stated that he and his brother live in Madison. They see each other about every other month and are on good terms. He stated that he would not feel uncomfortable if, during jury deliberations, another juror questioned his brother's credibility.

The court asked juror Wineke several questions to determine whether he could be impartial. Wineke answered that he could.[1] Gesch moved to strike Wineke for cause. The court refused. The court stated:

> [D]emeanor of the juror . . . is one of the factors upon which the Court exercises its discretion. I think it is fair to say that Mr. Wineke was very strong not

---

[1]The colloquy was as follows:

Q. ⋅ Would you find it difficulty on sitting on [sic] a case where your brother is a potential witness?

A. No.

Q. You don't think you would? You think you would be able to fairly and impartially judge his testimony even though he is your brother? I don't want to presume anything about your relationship here.

A. I don't believe it would be significant.

Q. Okay. In other words, you feel that if I were to instruct you to not give any additional weight to his testimony and treat him as you would any witness that you didn't know as well as you know your brother, do you think you could do that?

A. Easily. Yes.

Q. Easily? Okay, that's fine.

only in the substance but also in his demeanor in terms of asserting his independence. There were a couple of times he smiled when asked if he would have any difficulty seeing his brother criticized. I guess I inferred from that that he's quick to criticize his brother or certainly comfortable in the context of having his brother criticized . . . .. I feel fairly confident, actually very confident that Mr. Wineke was quite forthright in his expression of his independence . . . ..

Gesch used his peremptory challenges on other prospective jurors. Before the evidentiary portion of the trial, he again moved to disqualify juror Wineke for cause. Denying the motion, the court said:

Certainly I was suspicious and inclined to excuse him if he in fact didn't persuade me quite convincingly that he was of a very strong independent mind about treating his brother in a fashion virtually identical to a witness he didn't know. For many family situations, that would be a difficult proposition. It was clear to me that it was not a difficult proposition for that particular juror.

Officer Wineke testified at trial about the events at the clinic leading to Gesch's arrest. The state produced the testimony of several witnesses, but Officer Wineke was the only police witness to testify. The jury found Gesch guilty, and this appeal resulted.[2]

Gesch argues that Wineke's service on the jury denied him his right to due process and an impartial jury. He quotes from *Nyberg v. State,* 75 Wis. 2d 400, 404–05, 249 N.W.2d 524, 526 (1977) (citation omitted):

---

[2]It would not have resulted had the trial court exercised its undoubted discretion to excuse juror Wineke.

A trial court must honor challenges for cause whenever it may reasonably suspect that circumstances outside the evidence may create bias or appearance of bias. These guidelines are equally if not more important in a criminal trial where the accused may eventually be deprived of his or her liberty.

*Nyberg* is not dispositive. Following the passage Gesch quotes, the *Nyberg* court noted that the trial court had conducted a thorough voir dire, dismissed some jurors for cause and declined to dismiss others. The *Nyberg* court concluded that the trial court used the correct standard for dismissing panel members and had not abused its discretion. 75 Wis. 2d at 405, 249 N.W.2d at 526. Implicit in the court's analysis is that whether a trial court "may reasonably suspect" bias or the appearance of bias must be determined with respect to the particular juror whom a party wants excused. *Nyberg* does not compel the creation of broad, general rules.

Gesch does not argue that juror Wineke was partial or that the trial court's assessment of his ability to be impartial was erroneous. He points only to the fact that the juror is the brother of the police witness. That is not enough.[3] Gesch proposes a per se rule barring jury ser-

---

[3]The dissent's quotation from Lord Coke misses the mark. When discussing a "principall challenge" to a juror, Lord Coke said:

And again a principall challenge is of two sorts, either by judgment of law without any act of his, or by judgment of law upon his owne act.

And it is said that a principall challenge is, when there is expresse favour or expresse malice.

1. Without any act of his, as if the juror be of blood or kindred to either partie, *consaguineus*, which is compounded *ex con & sanguine, quasi eodem sanquine natus*, as it were issued from the same blood; and this is a principal challenge, for that the law presumeth

vice by relatives of witnesses. A per se rule would remove the matter from the trial court's discretion and convert it to an exclusion required by law. Gesch cites cases from other states,[4] but the Wisconsin Supreme Court has been "reluctant to exclude groups of persons from serving as petit jurors as a matter of law." *State v. Louis,* 156 Wis. 2d 470, 479, 457 N.W.2d 484, 488 (1990), *cert. denied,* 111 S. Ct. 1078 (1991). The *Louis* court refused to hold that, as a matter of law, jurors must be excused who are officers in the same police department as other officers who will testify.[5]

Gesch argues that sec. 805.08(1), Stats., compels Wineke's being excused from the jury. The statute provides in relevant part:

> The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood or marriage to any party or to any

---

that one kinsman doth favour another before a stranger; and how far remote soever he is of kindred, yet the challenge is good.

1 Coke's Commentary Upon Littleton (Butler & Hargrave's Notes) Note 157.a on Book 2, ch. 12 sec. 234 (1853) (footnotes omitted).

As the full quotation shows, Lord Coke refers to disqualification of a juror related to a party, not to a juror related to a witness.

[4]He cites: *Ex Parte Tucker,* 454 So. 2d 552 (Ala. 1984); *State v. Kuster,* 353 N.W.2d 428 (Iowa 1984); *Calvert v. Commonwealth,* 708 S.W.2d 121 (Ky. Ct. App. 1986); *Hayes v. Commonwealth,* 458 S.W.2d 3 (Ky. 1970); *Thompson v. State,* 519 P.2d 538 (Okla. Crim. App. 1974); *State v. Beckett,* 310 S.E.2d 883 (W. Va. 1983); and *State v. Kilpatrick,* 210 S.E.2d 480 (W. Va. 1974).

[5]We are not free to adopt the approach taken by the dissent. As an error-correcting court, we are bound by *Louis.*

attorney appearing in the case . . .. If a juror is not indifferent in the case, the juror shall be excused.

Gesch argues that Officer Wineke should be considered a "party" and therefore his brother should have been excused from the jury. Gesch notes that the state was represented by only two persons in the courtroom, the prosecutor and Officer Wineke, that the criminal complaint was founded on Wineke's report, and that he was the state's only witness. Gesch concludes that Officer Wineke was the "functional equivalent" of a party. We disagree.

Section 805.08(1), Stats., mandates excusing the relative of a party to avoid the juror's having to cast a vote which is deemed unquestionably to affect the fortune or future of a relative. Juror Wineke's vote would not unquestionably affect his brother's fortune or future.

Gesch argues that we have expanded "party" in sec. 805.08(1), Stats., to include persons who are so "closely allied" with a party that their interests are inseparable. He relies on *State v. Noren*, 125 Wis. 2d 204, 371 N.W.2d 381 (Ct. App. 1985). In *Noren*, the defendant, convicted of second-degree murder, appealed on grounds that the trial court should have excused a juror whose second cousin was married to the victim's sister. We said that marriage does not cause the blood relatives of one spouse to become related to the blood relatives of the other spouse. *Id.* at 211, 371 N.W.2d at 385. Gesch argues that we implicitly held that the victim in a criminal prosecution is a party for purposes of sec. 805.08(1). We did not. Because we held that the blood relatives of one spouse are not related to the blood relatives of the other spouse, we had no reason to decide whether a juror related to the victim must be excused.

999

We conclude that the judgment of conviction must be affirmed.

*By the Court.*—Judgment affirmed.

SUNDBY, J. *(dissenting).* There are relationships between prospective jurors and those who must ensure a criminal defendant a fair trial so close that it is contrary to human nature to expect that the juror can serve impartially. Such a relationship is present in this case. The juror Gesch challenged for cause is the brother of the arresting officer who was the state's only police witness.

I am sure that juror Wineke honestly believed that he could serve without partiality. The trial court conducted an extensive voir dire of the juror to determine whether he was actually biased. But actual bias is not the only test. "A trial court must honor challenges for cause whenever it may reasonably suspect that circumstances outside the evidence may create bias or *appearance of bias.*" *Nyberg v. State,* 75 Wis. 2d 400, 404, 249 N.W.2d 524, 526 (1977) (emphasis added). Perhaps the circumstance is better described as implied bias, a term adopted by other courts. *See United States v. Haynes,* 398 F.2d 980, 984 (2d Cir. 1968), *cert. denied,* 393 U.S. 1120 (1969).

> In determining whether a prospective juror should be excluded on this ground [implied bias] his statements upon voir dire are totally irrelevant; a person 'may declare that he feels no prejudice in the case; and yet the law cautiously incapacitates him from serving on the jury because it suspects prejudice, because in general persons in a similar situation would feel prejudice.'

*Id.* at 984 (quoting *United States v. Burr*, 25 F. Cas. 49, 50 (C.C. Va. 1807) (No. 14692g)).

Here, the trial court suspected prejudice because of the close relationship between the prospective juror and the state's witness. The court said: "Certainly I was suspicious . . .." The juror's responses to the court's questions satisfied the court that the juror was not actually biased. The juror's responses were, however, totally irrelevant. No matter how honest the juror's responses, the law cautiously incapacitated him from serving on the jury because in general, persons in a similar situation would feel prejudice. As Lord Coke put it: "[T]he law presumeth that one kinsman doth favour another before a stranger." 1 Coke's Commentary Upon Littleton (Butler & Hargrave's Notes) Note 157.a on Book 2, ch. 12 sec. 234 (1853).

Voir dire occurs at the beginning of criminal trials. The jurors are usually unfamiliar with criminal trials and may honestly believe that they can serve impartially. The conduct of the trial may educate the juror with too close a relationship to a witness, that he or she cannot make credibility determinations as impartially as he or she may have expected. By then, however, it is too late, as a practical matter, for the juror to withdraw. Hence the law's caution.

Further, the presence of a close relative of an important witness in the jury room may deter other jurors from making impartial credibility determinations, even if the juror/relative in fact remains impartial. A criminal defendant may not be made to bear this risk.

I do not, however, suggest a "class" or *per se* rule when a prospective juror is challenged because of a blood relationship with a witness. There may be no issue of credibility with respect to the witness. Where, however, as here, the witness's credibility is critical to the state's

case, a challenge to a prospective juror who has a close blood relationship to the witness must be honored to avoid the appearance of bias. "In any sound judicial system it is essential not only that justice be done but also that it appear to be done." *State v. Jackson*, 203 A.2d 1, 11 A.L.R.3d 841, 852 (N.J. 1964), *cert. denied, Ravenell v. New Jersey*, 379 U.S. 982 (1965).

I conclude that the trial court applied an incorrect standard to Gesch's motion to excuse juror Wineke. The court sought only to determine the juror's actual bias and did not consider the juror's appearance of bias. I therefore dissent.