STATE of Wisconsin, Plaintiff-Respondent,

v.

Gregory L. GESCH, Defendant-Appellant-Petitioner.

Supreme Court

*No. 90–1328–CR. Oral argument February 26, 1992.—Decided April 15, 1992.*

(Also reported in 482 N.W.2d 99.)

661

For defendant-appellant-petitioner there were briefs and oral argument by *Richard D. Martin,* assistant state public defender.

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

WILLIAM A. BABLITCH, J. Gregory Gesch (Gesch) seeks review of a court of appeals' decision affirming his conviction of one count of criminal trespass to a medical facility. Gesch contends that he was denied his constitutional rights to due process and a fair and impartial jury when the circuit court refused to strike for cause a prospective juror whose brother was the State of Wisconsin's (State's) only police witness. We agree. We conclude that prospective jurors who are related to a state witness by blood or marriage to the third degree as shown in Figure 852.03(2), Stats., must be struck from the jury panel on the basis of implied bias. Accordingly, we reverse the decision of the court of appeals.

The relevant facts are not in dispute. On April 1, 1988, Madison Police Officer David Wineke was dispatched to the Madison Abortion Clinic in response to two reports—one of a theft, and one of a criminal trespass. At the scene, Officer Wineke interviewed several persons, including the defendant, Gregory Gesch, and the proprietor of the clinic, Dr. Christensen. Officer Wineke made no arrest, but filed a police report of the incident. Four days later, Detective Mark Hetland contacted Dr. Christensen and other individuals working at the clinic and interviewed them about the activities that

transpired during the April 1 incident. A criminal complaint was issued against Gesch charging him with criminal trespass to a medical facility, sec. 943.145, Stats.[1]

At Gesch's trial, Officer Wineke was listed as a potential witness for the State. When the jury was being selected, prospective juror Daniel Wineke indicated that Officer Wineke was his brother. The court questioned Daniel Wineke to determine whether he could be impartial. Daniel Wineke indicated that he would remain impartial and would not give additional weight to his brother's testimony.[2]

---

[1]Section 943.145, Stats., provides:

  (1)  In this section, 'medical facility' means a hospital under s. 50.33(2) or a clinic or office that is used by a physician licensed under ch. 448 and that is subject to rules promulgated by the medical examining board for the clinic or office that are in effect on November 20, 1985.

  (2)  Whoever intentionally enters a medical facility without the consent of some person lawfully upon the premises, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class B misdemeanor.

  (3)  This section does not prohibit any person from participating in lawful conduct in labor disputes under s. 103.53.

[2]The discussion was as follows:

THE COURT:  Would you find it difficulty on sitting on [sic] a case where your brother is a potential witness?

MR. WINEKE:  No.

THE COURT:  You don't think you would? You think you would be able to fairly and impartially judge his testimony even though he is your brother? I don't want to presume anything about your relationship here.

MR WINEKE:  I don't believe it would be significant.

THE COURT:  Okay. In other words, you feel that if I were to instruct you to not give any additional weight to his testimony and treat him as you would any witness that you didn't know as well as you know your brother, do you think you could do that?

MR. WINEKE:  Easily. Yes.

On voir dire, Gesch's defense counsel questioned Daniel Wineke. Daniel indicated that he and his brother both live in Madison, see each other about every month, and are on good terms. Daniel also asserted that he would not be uncomfortable if other jurors criticized his brother's testimony during jury deliberations. Gesch's defense counsel moved to have Daniel Wineke removed for cause. The circuit court refused, explaining:

> As I indicated to counsel, I thought that one of the things that doesn't appear in the transcript, unfortunately, is the demeanor of the juror which is one of the factors upon which the Court exercises its discretion. I think it is fair to say that Mr. Wineke was very strong not only in the substance but also in his demeanor in terms of asserting his independence. There were a couple of times he smiled when asked if he would have any difficulty seeing his brother criticized. I guess I inferred from that that he's quick to criticize his brother or certainly comfortable in the context of having his brother criticized. I also mentioned to counsel that this juror comes from a family who's fairly prominent in this community, including one brother who ran for county executive just recently and another brother who is a religion editor for a local newspaper. I frankly don't have any question in my mind that this was a true, albeit unusual, indication of independence on the part of this juror.
> . . .
> I feel fairly confident, actually very confident that Mr. Wineke was quite forthright in his expression of his independence, even given the fact that his brother is a juror [sic]. It surprised me to some extent, but he appeared to be quite candid and quite forthright in the fact that he wasn't the least bit bothered by his presence on the jury.

THE COURT: Easily? Okay, that's fine.

Defense counsel subsequently exhausted his peremptory challenges on other jurors.

Prior to the commencement of the evidentiary portion of the trial, Gesch's defense counsel again moved to strike juror Wineke for cause. Again the court refused stating:

> I scrutinized Juror Wineke's responses as closely as I could with an eye toward a presumption of disqualification, and he very strongly in my view and as I detailed yesterday in my view rebutted that presumption of bias or possible sympathy. Certainly I was suspicious and inclined to excuse him if he in fact didn't persuade me quite convincingly that he was of a very strong independent mind about treating his brother in a fashion virtually identical to a witness he didn't know. For many family situations, that would be a difficult proposition. It was clear to me that it was not a difficult proposition for that particular juror.

Officer Wineke testified at trial. The State also produced the testimony of three other witnesses, but Officer Wineke was the State's sole police officer witness. The jury convicted Gesch, and he was sentenced to 40 days in jail.

Gesch appealed and the court of appeals upheld his conviction. *State v. Gesch,* 163 Wis. 2d 993, 473 N.W.2d 152 (Ct. App. 1991). We granted Gesch's petition for review. Further facts will appear in the opinion.

The issue before this court is whether Gesch was denied his constitutional rights to due process and a fair and impartial jury when the circuit court refused to strike for cause a prospective juror whose brother was the State's only police witness.

665

In the recent case of *State v. Louis,* this court addressed the law with respect to claims of juror bias. We stated:

> A criminal defendant is guaranteed the right to a trial by an impartial jury by Article I, Section 7 of the Wisconsin Constitution[3] and the Sixth Amendment of the United States Constitution,[4] as well as principles of due process. Prospective jurors are presumed impartial, and the challenger to that presumption bears the burden of proving bias. Bias may be either implied as a matter of law or actual in fact. Even the appearance of bias should be avoided. The question of whether a prospective juror is biased and should be dismissed from the jury panel for cause is a matter of the circuit court's discretion. *State v. Louis,* 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990) (citations omitted).

An abuse of discretion will be found if a circuit court's discretional decision is based on an error of law. *In re Marriage of Schulz v. Ystad,* 155 Wis. 2d 574, 599, 456 N.W.2d 312 (1990).

This court is reluctant to make *per se* exclusions of groups of persons from serving as jurors. *State v. Louis,* 156 Wis. 2d at 479. In most cases a circuit court's discretion in determining the potential for actual juror impartiality or bias will suffice to protect a defendant's right to an impartial jury. However, there are situations in which the relationship between a prospective juror and a par-

---

[3] ARTICLE I, SECTION 7. WISCONSIN CONSTITUTION. [I]n prosecutions by indictment, or information [the accused shall enjoy the right] to a speedy public trial by an impartial jury . . ..

[4] SIXTH AMENDMENT, UNITED STATES CONSTITUTION. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ..

ticipant in the trial is so close that a finding of implied bias is mandated. Such a situation exists in this case of first impression.

The juror, Daniel Wineke, is the brother of the State's only police witness. The circuit court judge made an admirable and thorough search for actual bias and found no actual bias. But where a prospective juror is related to a state witness by blood or marriage to the third degree, special problems exist that render a circuit court's search for actual bias an inadequate protection of a defendant's right to an impartial jury. One such problem is the potential for unconscious bias. It is virtually impossible for a prospective juror to consciously estimate how the family relationship with a witness will affect his or her judgment. Although no intentional actual bias may exist, the risk of unconscious bias in these situations is manifest. As one court discussing this subject noted:

> 'Blood is thicker than water;' and it is utterly impossible for any person to determine how far the judgment or action of a person affected by it may be swayed or controlled. It operates upon the mind and heart of the individual secretly and silently. Its operation is not disclosed by any outward manifestation other than the result. It is utterly impossible to look into a man's mind and see its operation. Its effect is not general, like many other disqualifications. It is purely personal, operating between the related parties and to the prejudice of all others. *State v. Kilpatrick*, 210 S.E.2d 480, 483 (1974) (quoting *State v. Harris*, 69 W. Va. 244, 245, 71 S.E. 609 (1911)).

We have no doubt that Daniel Wineke honestly believed that he could remain impartial. However, it is a unique individual that could remain unaffected by the

testimony of a relative by blood or marriage to the third degree, one way or the other. Due process requires that a criminal defendant receive "[a] fair trial in a fair tribunal. . . ." *In re Murchison*, 349 U.S. 133, 136 (1955). In circumstances, such as here, the mere probability of bias is so high that in order to assure a defendant the fundamental fairness to which the defendant is entitled, we must imply bias and exclude the juror as a matter of law.

Furthermore, the potential for bias is not the only possible problem associated with keeping a relative by blood or marriage to the third degree of a witness on the jury. Understandably, other jurors may be hesitant to question or criticize the witness's testimony in front of the juror/relative. There is also the risk that jurors may be reluctant to comment on the credibility or demeanor of the witness. As Judge Sundby of the court of appeals pointed out in his dissent in this case, "[a] criminal defendant may not be made to bear this risk." *State v. Gesch*, 163 Wis. 2d at 1001 (Sundby, J., dissenting). We agree.

In this case, the potential for this type of harm was particularly great. Officer Wineke played an active role in the prosecution of Gregory Gesch. The complaint initiated by Detective Mark Hetland was based in some detail on the police report written by Officer Wineke. The prosecution noted in opening argument that a police officer would be testifying concerning what the defendant told him when he arrived at the scene of the alleged crime. Officer Wineke was the only State witness not employed or affiliated with the abortion clinic. Officer Wineke provided testimony that corroborated much of the testimony of the State's other witnesses. In addition, Officer Wineke was the prosecution witness who provided the chain of custody for an exhibit to come into the trial. As is evident, Officer Wineke's testimony and

credibility clearly played a role in the defense of Gregory Gesch.

Whether Daniel Wineke or any other relative by blood or marriage to the third degree of a state witness will be actually biased we may never know, but what is important is the existence of the very high potential that they will be. Whether Daniel Wineke's presence in the jury room actually hindered significant credibility determinations we will never know, but what is important is the fact that it could have.

■

We conclude that under these circumstances, bias must be implied and the juror excused. The probability of bias is high. The circuit court's search for actual bias offers some, but not complete, assurance that prejudice does not exist. Even the absence of actual bias does nothing to alleviate the potential impact on the jury's deliberations. Accordingly, the circuit court's failure to disqualify juror Daniel Wineke violated Gesch's constitutional rights under the Sixth Amendment of the United States Constitution, the Wisconsin Constitution Article I, Section 7, and principles of due process.

The State argues that *Smith v. Phillips*, 455 U.S. 209 (1982), forecloses this court from holding that Gesch's constitutional rights have been violated based on implied jury bias. Specifically, the State interprets *Smith* as holding that the constitutional right to be tried by a panel of impartial jurors is violated only when a juror is actually biased. We disagree.

The United States Supreme Court has not specifically ruled on the issue presented in this case. In *Smith,* the Court refused to make a *per se* exclusion on the ground of implied bias of a juror who had pursued employment with the office of the prosecutor involved in the case. *Smith* is fact specific. The Court did not "fore-

close the use of 'implied bias' in appropriate circumstances." *Id.* at 221 (O'Connor, J., concurring).

Our interpretation of *Smith* is supported by the Supreme Court's failure in *Smith* to overrule its earlier decision in *Peters v. Kiff*, 407 U.S. 493 (1972). In *Peters,* the United States Supreme Court stated that "*even if there is no showing of actual bias* in the tribunal, this Court has held that due process is denied by circumstances that create the *likelihood* or the appearance of bias." *Peters,* 407 U.S. at 502 (opinion announcing judgment) (emphasis added). If the Court in *Smith* intended to hold that a defendant's constitutional right to an impartial jury is violated only when a juror is shown to be actually biased, it would have overruled this clearly contradictory language. We conclude that *Smith* does not control the issue before us.

Similarly, we do not agree with the State's contention that this court's decision in *State v. Louis,* 156 Wis. 2d 470 is dispositive of the issue before us. In *Louis,* we held that law enforcement officials of the jurisdiction where the crime was committed are not *per se* ineligible to serve as jurors based on implied bias. The State argues that because we noted in *Louis* that the question of juror exclusion is within the circuit court's discretion, we necessarily foreclosed the use of *per se* exclusions based on implied bias. This argument is without merit.

In *Louis,* we said that "[b]ias may be either implied as a matter of law or actual in fact." *Louis,* 156 Wis. 2d at 478. Allowing an exclusion based on implied bias as a matter of law is not inconsistent with generally leaving the question of juror exclusion within the circuit court's sound discretion. *Louis* did not prohibit the use of *per se* exclusions based on implied bias in appropriate circumstances. This case provides such a circumstance.

Lastly, the State argues that Gesch's defense counsel's failure to exercise a peremptory challenge to juror Wineke results in a waiver of his right to raise on appeal any issue regarding the circuit court's failure to strike juror Wineke for cause. We disagree. The State's position would leave the defendant in an unavoidable and extremely unfair "catch 22."

The State conceded at oral argument that had the defendant struck juror Wineke and subsequently been convicted, the circuit court's refusal to strike for cause would have been harmless error. Thus, according to the State, if the defendant peremptorily strikes the contested juror, the defendant loses on appeal based on harmless error. If the defendant does not strike the juror, the defendant loses based on waiver. We will not force a defendant into such a "lose-lose" position. The peremptory challenge is one of the most important of the rights secured to the accused.

For the reasons set forth above we conclude that prospective jurors who are related to a state witness by blood or marriage to the third degree as shown in Figure 852.03(2), Stats., must be struck from the jury panel on the basis of implied bias. Failure to do so is a violation of the defendant's rights under the Sixth Amendment of the United States Constitution, the Wisconsin Constitution Article I, Section 7, and is violative of the principles of due process. Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.