STATE of Wisconsin, Plaintiff-Respondent,†

v.

Vance FERRON, Defendant-Appellant.

Court of Appeals

*No. 96–3425–CR. Submitted on briefs September 2, 1997.—Decided October 21, 1997.*

(Also reported in 570 N.W.2d 883.)

†Petition to review granted.

268

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jane Krueger Smith* of Oconto Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Paul Lundsten,* assistant attorney general.

Before Cane, P.J., Myse and Hoover, JJ.

CANE, P.J.   Vance Ferron appeals a judgment of conviction for party to the crime of burglary, contrary to §§ 943.10(1)(a) and 939.05, STATS. Ferron contends the trial court committed reversible error when it refused to strike a prospective juror for cause, thus requiring Ferron to exercise one of his peremptory

challenges to correct the court's error, thereby depriving him of his right to due process as defined by state law. Because the trial court erroneously exercised its discretion by refusing to strike the juror for cause, and because Ferron thereafter used a statutorily granted peremptory challenge to excuse the juror, we conclude Ferron was arbitrarily deprived of his right to exercise his full complement of peremptory challenges and, therefore, reverse and remand for a new trial.

The underlying facts of the appeal are neither complicated nor in dispute. Ferron and his codefendant, Timothy Nelson, were charged with party to the crime of burglary and were tried as codefendants. The jury found Ferron and Nelson guilty as charged. Ferron received a five-year prison sentence, which was stayed, and he was placed on probation for five years and required to serve one year in the county jail as a condition of probation. No postconviction motion was filed.

The issue on appeal arose during the voir dire examination of prospective jurors. Following the trial court's initial questioning of the jury panel, Christopher Froelich, counsel for Ferron, posed various questions to the prospective jurors, including whether any juror would hold it against his client if he did not testify on his own behalf. There were no responses to Froelich's queries.[1]

---

[1] The transcript of proceedings dated March 26, 1996, indicates the following colloquy:

> MR. FROELICH: In a criminal case, our constitution, our U.S. Constitution and our Wisconsin Constitution, grants the accused, Mr. Vance Ferron, the right not to take the witness stand and prohibits the jury from drawing any inference, adverse to him, if he elects to exercise that right. Would you as jurors be able to set aside any feelings you may have which are inconsistent with this principle of law and apply the law in this case?

The colloquy giving rise to Ferron's challenge on appeal occurred during questioning by William Fitzgerald, counsel for the codefendant Nelson. The relevant colloquy is included at this juncture. The dialogue among Fitzgerald, jurors Metzler and Clark,[2] and the court is provided below:

> MR. FITZGERALD: . . . Now, keeping that in mind, I may instruct Mr. Nelson that I don't think that he has to take the witness stand. And what I wonder is would any of you think to yourself, well, you're saying the State's case is lousy, but you didn't even have your guy testify so what does that make your case? Yes, Mr. Metzler.

> JUROR JAMES METZLER: Well, if your client is innocent, why wouldn't he take the stand?

> MR. FITZGERALD: Becauses (sic) the constitution doesn't say he has to.

> JUROR JAMES METZLER: Well, if he's innocent, why wouldn't he go up there and tell us he's innocent?

> MR. FITZGERALD: Well, without getting into a long exchange about the constitutional rights that we all have, I can only tell you that the Court will instruct you that a defendant has the absolute right to decline to talk to the jury, to talk to the police, to talk to people investigating the crime, and that it might be my advice to him he need not take the

---

(No response.)

. . . .

MR. FROELICH: Would any of you hold it against Mr. Ferron if he didn't testify today?

(No response.)

[2] Clark's removal for cause is not at issue on appeal. Her comments are included for context and completeness.

stand. And is your questioning an indication that you would hold that against him?

JUROR JAMES METZLER:   I think I may.

MR. FITZGERALD:   You think you may.

The trial court then read the instruction to the jury panel iterating Ferron's absolute constitutional right not to testify and explaining that his decision must not be considered by the jury in any way or allowed to influence its verdict in any manner. At that point, Clark voiced concerns about Ferron not testifying and her additional concern that she could fairly consider evidence of alcohol use as a defense. Without addressing Clark's latter concern, the trial court refocused the discussion on the issue of a defendant testifying and asked the following questions:

THE COURT:   [B]ut as I said before, we have to set aside those personal beliefs or opinions that we have that conflict with the law that I'm going to give you. The question is, is there any one of you who cannot follow the law that I've just read to you?

JUROR JAMES METZLER:   Well, I would have a hard time believing that he was innocent if he didn't take the stand and tell me he wasn't (sic) innocent. That's just my own belief.

THE COURT:   Well, I understand that, sir. And I said you're certainly entitled to that belief, and you're not the only person with that belief. But the United States Constitution and the Constitution of the State of Wisconsin give every person the right not to testify and the right that cannot be held against them if they choose not to do so. That's a right that you have, that I have, everybody has,

272

including the defendants. So we have to honor that right.[3]

The question is your opinion so strong or your belief so strong you're not willing to set those aside for the purpose of this case and follow the law that I've given you?

JUROR JAMES METZLER: Well, I would certainly try to set it aside. (Footnote added.)

Clark responded that she would try but she was not sure she could completely set her feelings aside. The colloquy continued as follows:

THE COURT: The thing you have to do is not use that against the defendant. You have to decide the case on the evidence as it comes out in the courtroom, not things that didn't happen. That's the point. Can you do did (sic) that?

JUROR M.C. CLARK: I'm not so sure I could.

THE COURT: Mr. Metzler, can you?

JUROR JAMES METZLER: Probably.

THE COURT: You don't think you could, Miss Clark?

JUROR M.C. CLARK: I certainly would try, but it would be, you know, I guess still it would always be there. I would try.

THE COURT: Counsel?

---

[3] Since we decide the case on other grounds, we do not address appellant's argument that the court, by its comments, denigrated the importance of Ferron's constitutional right not to testify at trial; created a hostile climate toward the treatment of said right; misstated the law with regard to said right; or otherwise sanctioned Metzler's sentiments.

MR. FITZGERALD: Well, I guess I feel we're getting low on jurors, but I would move to relieve Mr. Metzler and Miss Clark.

THE COURT: I'm not removing Mr. Metzler. He said he could do this. I'm concerned about Miss Clark.

Froelich then moved to have Clark removed for cause based on her comments. The court continued to question Clark to determine if she could set her feelings aside and decide the case based on the evidence and the law, and she ultimately responded, "I would have to say I would have a hard time that they didn't testify." At that point, the court excused Clark.

Ferron contends the trial court committed reversible error by refusing to strike Metzler for cause. He argues Metzler held a bias against a defendant who did not testify and, because Metzler did not state he could set that bias aside, he was not indifferent and should have been excused. The State takes the position that Metzler's answers did not amount to manifest bias and, therefore, the trial court's decision should not be disturbed.

"The question of whether a prospective juror is biased and should be dismissed from the jury panel for cause is a matter of the circuit court's discretion." *State v. Ramos*, 211 Wis. 2d 12, 15, 564 N.W.2d 328, 330 (1997), (quoting *State v. Gesch*, 167 Wis. 2d 660, 666, 482 N.W.2d 99, 102 (1992)). On review, we will find an erroneous exercise of discretion if the trial court's decision is based on an error of law. *See id.* at 16, 564 N.W.2d at 330.

Section 805.08(1), STATS., sets forth the trial court's duty in determining whether jurors are qualified to serve: "The court shall examine on oath each person

who is called as a juror to discover whether the juror . . . has expressed or formed any opinion, or is aware of any bias or prejudice in the case." In addition, § 805.08(1) requires the court to excuse a juror who is not indifferent in the case. In addressing a motion to strike a prospective juror for cause, the trial court "must honor challenges for cause whenever it may reasonably suspect that circumstances outside the evidence may create bias or appearance of bias." *Nyberg v. State*, 75 Wis. 2d 400, 404, 249 N.W.2d 524, 526 (1977). However, a juror who expresses an opinion or bias may still serve on the jury if the person "can lay aside his or her opinion and render a verdict based on the evidence presented in court." *State v. Sarinske*, 91 Wis. 2d 14, 33, 280 N.W.2d 725, 733–34 (1979). The evaluation of the juror's sincerity in answering whether he or she can be fair and impartial is also a matter within the trial court's discretion. *Id.* at 33, 280 N.W.2d at 734.

We agree with Ferron that the trial court erroneously exercised its discretion when it refused to excuse Metzler for cause. Metzler stated the opinion that an innocent person would testify in his own behalf and stated he thought he may hold it against Ferron if he did not take the witness stand in his own defense. Metzler twice expressed the expectation that an innocent person would not hesitate to give his or her side of the story and that he would have a hard time believing Ferron was innocent if he did not take the stand and assert his innocence. The court recognized Metzler's bias as incompatible with the duty of a juror to be fair and impartial, and the court continued to question Metzler to determine whether he could be indifferent in the case. Metzler indicated that he "would try" to set his feelings aside. In response to the court's question of whether he could decide the case solely on the evidence

presented and not hold it against the defendant if he did not testify, Metzler responded "Probably."

Metzler's response was not sufficient to establish that he could be indifferent and follow the court's instructions and decide the case based on the evidence. Absent a clarification of Metzler's final response, his answer of "Probably" did not establish he could set his feelings aside and be indifferent. Furthermore, upon counsel's motion to have Metzler removed for cause, the court concluded that Metzler would not be excused because "he said he could do this." Without addressing whether the court's conclusion was based on an incorrect recollection, or whether the trial court accepted Metzler's answer of "Probably" as an unequivocal confirmation that he could set his feelings aside, we hold that his answer showed he was not indifferent as required under the statute. In addition, Metzler's answers provided a sufficient basis for the trial court to reasonably suspect that Metzler would allow his opinion to influence his verdict if the defendant did not testify in his own behalf. The trial court erroneously exercised its discretion by failing to follow the directive in § 805.08(1), STATS., to excuse a juror who is not indifferent, as well as the *Nyberg* requirement that a motion to remove for cause be granted when the court reasonably suspects that circumstances outside the evidence will influence the juror.

Having determined that Metzler should have been removed for cause, we next address the effect of the trial court's error. Ferron asserts the trial court's failure to excuse Metzler is reversible error and that he is therefore entitled to a new trial. Relying on the court's recent decision in *Ramos*, Ferron argues that because he was required to exercise one of his peremptory chal-

lenges to correct the trial court's error, he was deprived of his due process rights, and is entitled to a new trial. In response, the State argues that even if the court did err, the error was harmless since the jury that ultimately decided Ferron's case was impartial and therefore reversal is neither necessary nor required.[4]

The State argues that since the jury was impartial, there was no prejudice to the defendant. The State's emphasis on the ultimately impartial jury is misplaced. First, Ferron does not allege that he was denied an impartial jury. Second, *Ramos* holds that when a party is required to exercise a peremptory challenge to correct a trial court error, even though there is no violation of the defendant's Sixth or Fourteenth Amendment right to an impartial jury, the result is, nevertheless, a violation of due process as defined by state law, and the remedy is reversal. *See Ramos*, 211 Wis. 2d at 18, 564 N.W.2d at 331. We therefore reject the State's contention that the error was harmless.

In determining whether Ferron was denied due process, we rely on *Ramos*, which adopted the reason-

[4] The State also suggests the case should be remanded to determine the factual basis of Ferron's claim because the appellate record does not establish that Ferron's counsel did actually exercise a peremptory challenge to remove Metzler. While it is true that the affidavits Ferron submitted are not a part of the appellate record, it is unnecessary to remand for a factual determination. The juror list containing the caption "State of Wisconsin v. Timothy Nelson & Vance Ferron, Case Nos. 95-CF–786, 95-CF–787," reflects that each codefendant received two strikes; that Ferron's counsel used his first strike to remove Metzler; and that the State received and exercised four strikes. Since the juror list clearly reflects that Ferron's counsel struck Metzler, we reject the State's argument that the case be remanded for a factual determination.

ing of *Ross v. Oklahoma*, 487 U.S. 81 (1988). *Ross* set forth the method for determining whether the trial court's failure to strike a juror for cause violated a defendant's due process rights. Starting from the proposition that "the right to exercise peremptory challenges is 'one of the most important of the rights secured to the accused,'" the court also stated that "[t]he denial or impairment of the right is reversible error without a showing of prejudice." *Ramos*, 211 Wis. 2d at 18, 564 N.W.2d at 331 (quoting *Ross*, 487 U.S. at 89).

The *Ross* Court noted that since peremptory challenges were created by state statute, it was "for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." *Ramos,* 211 Wis. 2d at 18, 564 N.W.2d at 331 (quoting *Ross*, 487 U.S. at 89). The Court held that "the 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Id.* at 19, 564 N.W.2d at 331 (quoting *Ross,* 487 U.S. at 89).

The result in *Ross*, then, turned on what Oklahoma law provided and required. Oklahoma law required that a defendant who disagrees with the trial court's decision on a motion to strike for cause must use a peremptory challenge to correct the error in order to preserve a claim on appeal that the ruling deprived him of a fair trial. The *Ross* Court held that since the defendant was required to correct the trial court's error through use of a peremptory challenge, he was not denied anything required by the statute and, therefore, there was no violation of his right to due process. *See Ross*, 487 U.S. at 90–91.

In Wisconsin, however, there is no such requirement placed on a defendant. *See Ramos*, 211 Wis. 2d at

19, 564 N.W.2d at 331–32; *see also Gesch,* 167 Wis. 2d at 671, 482 N.W.2d at 104. The *Ramos* court determined that since the defendant was entitled by Wisconsin statute to seven peremptory challenges, and because the defendant was required to expend one of those challenges to correct a trial court error, the defendant was deprived of his right to exercise the full complement of his peremptory challenges and was therefore entitled to a new trial. *See Ramos,* 211 Wis. 2d at 23, 564 N.W.2d at 333.

Here, Ferron was given two peremptory challenges under § 972.03, STATS., which provides in relevant part:

> Each side is entitled to only 4 peremptory challenges except as otherwise provided in this section. . . . If there is more than one defendant, the court shall divide the challenges as equally as practicable among them; and if their defenses are adverse and the court is satisfied that the protection of their rights so requires, the court may allow the defendants additional challenges.

In addition, in felony cases other than those punishable by life imprisonment, the total challenges allowed the defense shall not exceed six challenges if there are only two defendants. *See* § 972.03, STATS.

The jury list demonstrates Ferron exercised his first peremptory challenge to correct the trial court's error and strike Metzler. "[T]he use of a peremptory challenge to correct a trial court error is adequate grounds for reversal because it arbitrarily deprives the defendant of a statutorily granted right."[5] *Ramos,* 211

---

[5] We note that the State attempts to distinguish this case from *State v. Ramos,* 211 Wis. 2d 12, 564 N.W.2d 328 (1997), on the basis of the dicta stating that "[T]he juror remained on the

Wis. 2d at 24–25, 564 N.W.2d at 334. Therefore, even though Ferron's case was decided by a fair and impartial jury, he is nevertheless entitled to a new trial based on the violation of his right to due process. The State goes on to argue that even if Ferron was required to use a peremptory challenge to remedy the trial court's error, there was still no infringement of Ferron's due process rights because he received more than what § 972.03, STATS., required. This argument is based on the erroneous information contained in the affidavits of trial counsel presented by Ferron stating that each defendant exercised three strikes. Furthermore, the affidavits are not a part of the appellate record.[6] The State's argument, based on erroneous assumptions made from information not considered by this court, is therefore moot, and we decline to address it further.

*By the Court.*—Judgment reversed and cause remanded.

jury panel . . . only because the trial court was steadfast and arbitrary in its refusal to take the seconds necessary to have the court reporter read back the juror's statement." *Id.* at 23, 564 N.W.2d at 333. The State argues that Ferron must show the trial court's refusal to strike the juror for cause was in some way arbitrary. We do not read *Ramos* as applying only to the arbitrary denial of the opportunity to present evidence to prove a juror's bias and decline to restrict the holding as the State suggests.

[6] Had either counsel for Ferron or the State endeavored to locate and include the juror list, the court and counsel could have operated from the outset with the facts indicating that the State exercised four peremptory challenges, Ferron and Nelson each exercised two, and Ferron used his first peremptory challenge to remove Metzler.