**2022 WI App 4**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2020AP1699-CR

† Petition for Review filed

Complete Title of Case:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

NAKYTA V.T. CHENTIS,

DEFENDANT-APPELLANT.†

| | |
|---|---|
| Opinion Filed: | December 1, 2021 |
| Submitted on Briefs: | August 30, 2021 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Gundrum, P.J., Neubauer and Grogan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dustin C. Haskell*, Assistant State Public Defender of Milwaukee. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John W. Kellis*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

COURT OF APPEALS
DECISION
DATED AND FILED

December 1, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1699-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF1014

IN COURT OF APPEALS

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

NAKYTA V.T. CHENTIS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: MARIA S. LAZAR and JACK A. MELVIN, III, Judges. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

¶1 GUNDRUM, P.J. Nakyta V.T. Chentis appeals from a judgment of conviction for possession of a narcotic drug and an order denying his postconviction

motion seeking plea withdrawal.[1] He argues that because the State could prove he possessed only a trace amount of heroin, his conviction is prohibited under *Kabat v. State*, 76 Wis. 2d 224, 251 N.W.2d 38 (1977), based on lack of knowledge that the substance he possessed was a narcotic drug. Accordingly, he argues there was an insufficient factual basis for his no-contest plea.

¶2    We agree with the circuit court that there was a sufficient factual basis for Chentis's plea. Unlike in *Kabat*, here there was compelling circumstantial evidence of recent drug use, which supported the requisite inference that Chentis knew he possessed a narcotic drug. Accordingly, we affirm.

## BACKGROUND

¶3    Following a traffic stop, Chentis was charged with possession of a narcotic drug and possession of drug paraphernalia. According to the criminal complaint, a K-9 unit alerted on Chentis's vehicle during the stop, and the officer noticed fresh track marks on Chentis's arm that were consistent with recent drug use and needle injection. In a search of the vehicle, police discovered a black case containing needles, cotton balls, and what appeared to be a water solution; a blue nylon bag, which contained several needles wrapped in a blue constrictor band; a "metal cap commonly used to cook controlled substances"[2]; a crack pipe; and "a clear plastic baggie containing a white powdery substance." The substance in the baggie field-tested positive for oxycodone.

---

[1] The Honorable Maria S. Lazar entered the judgment of conviction. The Honorable Jack A. Melvin, III, entered the order denying the postconviction motion.

[2] As the parties note, the metal cap law enforcement suspected of being used to "cook" controlled substances is described several different ways in the record. Consistent with the State's brief, we use the term "tin cooker" for the remainder of this opinion.

¶4 The suspected oxycodone initially formed the basis for the narcotic possession charge, but testing by the State Crime Laboratory did not reveal the presence of any controlled substances within the baggie. Using a menthol rinse on the tin cooker, however, the laboratory discovered trace quantities of cocaine and heroin.

¶5 Chentis ultimately pled to possession of a narcotic drug, and the possession of drug paraphernalia charge was dismissed and read in. During the plea colloquy—specifically, when addressing the factual basis for the plea—the parties stipulated that the criminal complaint contained the relevant facts. Defense counsel then clarified that the basis for the plea was not the suspected oxycodone but rather the trace amount of heroin discovered in the tin cooker:

> [DEFENSE COUNSEL]: Your Honor … the substance that they tested is not what he ultimately would have been convicted on if the case went to trial. There's been some lab testing of some of the paraphernalia that found trace amounts of heroin, and that's the basis. So I just want to put that on the record, that that's the basis for his no contest plea today.
>
> THE COURT: It was a controlled substance, just not that one?
>
> [DEFENSE COUNSEL]: Correct. I understand the State could have filed an amended information or done any number of things, but … if the case were to proceed to trial, given what we know through discovery and through the complaint, there is sufficient evidence that Mr. Chentis understands that he could have been found guilty at trial.
>
> THE COURT: Of possession of a controlled substance?
>
> [DEFENSE COUNSEL]: Correct.
>
> THE COURT: Is that your understanding as well, Mr. Chentis?
>
> THE DEFENDANT: Yes.

¶6    Following sentencing, Chentis filed a postconviction motion seeking plea withdrawal.  He argued there was no factual basis for his plea because, pursuant to existing case law, there was no basis to conclude he *knowingly* possessed the trace quantity of heroin discovered in the tin cooker.  Chentis also argued his attorney was constitutionally ineffective for advising him to plead no contest rather than seeking to have the narcotic possession charge dismissed.

¶7    The circuit court denied the motion following a nonevidentiary hearing, concluding that a reasonable jury could have inferred from "the other evidence of … drug paraphernalia as well as the physical characteristics of the defendant at the time of the arrest" that Chentis had recently used heroin and therefore knew of the presence of heroin in the tin cooker.  The court therefore determined that a factual basis existed for Chentis's plea.  Chentis appeals that determination.

### DISCUSSION

¶8    When a defendant seeks to withdraw a plea after sentencing, the defendant bears the "heavy burden" to show by clear and convincing evidence that withdrawal is necessary to correct a manifest injustice.  *State v. Thomas*, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836 (citing *State v. Washington*, 176 Wis. 2d 205, 213, 500 N.W.2d 331 (Ct. App. 1993)).  One way in which a manifest injustice occurs is by a circuit court failing to establish a factual basis that constitutes the offense to which the defendant pled.  *Id.*, ¶17.  A factual basis exists "if an inculpatory inference can be drawn from the complaint or facts admitted to by the defendant even though it may conflict with an exculpatory inference elsewhere in the record."  *State v. Black*, 2001 WI 31, ¶16, 242 Wis. 2d 126, 624 N.W.2d 363.  Because the factual basis for Chentis's plea was based on documents and did not

have a testimonial component, we review de novo whether there was a sufficient factual basis. *See* *State v. Peralta*, 2011 WI App 81, ¶16, 334 Wis. 2d 159, 800 N.W.2d 512.

¶9      There is no minimum quantity of a controlled substance necessary to sustain a conviction for possession. *State v. Poellinger*, 153 Wis. 2d 493, 508, 451 N.W.2d 752 (1990). However, possession of a controlled substance requires "both knowledge and control." *State v. Brantner*, 2020 WI 21, ¶14, 390 Wis. 2d 494, 939 N.W.2d 546. Thus, the State must prove the defendant "knew or believed" that he/she was in possession of a narcotic drug. *Poellinger*, 153 Wis. 2d at 508. "Such knowledge or belief may be shown circumstantially by conduct, directly by admission, or indirectly by contradictory statements from which guilt may be inferred." *State v. Trimbell*, 64 Wis. 2d 379, 384-85, 219 N.W.2d 369 (1974).

¶10      Chentis asserts his possession of heroin was not knowing because "this case involves an immeasurably small quantity of a narcotic." He argues this case is controlled by *Kabat*. Kabat was convicted of possessing marijuana, which was in the form of a very small amount of burnt, ash-like residue found in a metal pipe in his possession. *Kabat*, 76 Wis. 2d at 226-27. The chemist who testified at trial stated that testing of the residue revealed a chemical ingredient of marijuana, but she was not able to identify the contents of the pipe as contraband by sight or smell. *Id.* at 226. Although Kabat admitted to smoking marijuana from the pipe weeks earlier, his testimony—which was apparently undisputed—was that he had no reason to believe it still contained marijuana as he had cleaned it two weeks prior to the police finding it and had not used it since. *Id.* Kabat therefore argued the evidence was insufficient to support a possession conviction "because the amount and form of the drug in the pipe did not permit the trier of fact to infer that Kabat had knowledge of its presence." *Id.* at 227.

5

¶11    Our supreme court agreed.  As an initial matter, the court reaffirmed that possession of even a "modicum" of an illegal drug is sufficient to support a conviction for possession.  *Id.* at 229 (citing *Fletcher v. State*, 68 Wis. 2d 381, 384-85, 228 N.W.2d 708 (1975); *State v. Dodd*, 28 Wis. 2d 643, 651, 137 N.W.2d 465 (1965)).  The court explained, however, that there must be sufficient facts to establish the defendant's knowledge of the character of the material in his or her possession, summarizing a rule from various cases that "the awareness of the defendant of the presence of the narcotic, not scientific measurement and detection, is the ultimate test of the known possession of a narcotic." *Kabat*, 76 Wis. 2d at 228 (citations omitted).  Applying that test, the court concluded that because a lay person could not tell that the burnt ash material still contained the ingredients of a controlled substance, "[u]nder the circumstances of the case it cannot be said that the presence of the narcotic was reflected in such a form as reasonably imputed knowledge to Kabat that it was marijuana." *Id.* at 228-29.

¶12    *Poellinger* is also instructive on the issue of "knowing" possession.  Invoking *Kabat*, Poellinger argued that the evidence presented at her trial was insufficient to convict her of knowingly possessing cocaine because her prosecution was based only on residual amounts of cocaine in the threads holding a cap on a small glass vial found in her purse. *Poellinger*, 153 Wis. 2d at 498-99.  Our supreme court made clear that *Kabat* does not dictate dismissal of a possession charge when only a trace quantity of a controlled substance is found. *See Poellinger*, 153 Wis. 2d at 508.  Rather, the court held that the jury—taking into account matters of common knowledge and experience in life affairs—could reasonably infer that Poellinger had either seen the white residue on the threads when replacing the vial cap or knew that, absent "extraordinary measures to remove the contents of a bottle after all usable amounts are gone, some of those contents will remain behind." *Id.*

at 508-09. These reasonable inferences were sufficient to satisfy the "knowledge" element of the possession charge. *Id.* at 509.

¶13 In the case now before us, there was strong circumstantial evidence of Chentis's knowledge that the tin cooker contained a trace amount of heroin. The vehicle—which was owned and driven by Chentis—contained drug paraphernalia indicative of heroin use, including needles, cotton balls, and a constrictor band. Additionally, and significantly, Chentis's arm had fresh track marks that police believed were consistent with recent drug use and needle injection. *See Dodd*, 28 Wis. 2d at 649 (noting, in the context of a possession charge, that if the defendant would have had "fresh marks" on his arms, this would have "indicat[ed] he had recently used heroin"). There was no evidence to suggest Chentis had cleaned the tin cooker or would have had any other reason to believe drug residue would have been eradicated from it. Based on these circumstances, a reasonable inference is that Chentis had recently used heroin and knew of its residual presence in the tin cooker found with him in the vehicle.[3] The "inculpatory inference[s]" that can be drawn from the facts here are sufficient to establish a factual basis for Chentis's plea, including his knowledge, despite the heroin only being present in a trace amount. *See Black*, 242 Wis. 2d 126, ¶16.

¶14 Chentis also argues his trial counsel was ineffective for failing to seek dismissal of the narcotic possession charge after receiving the results of the crime lab analysis and instead counseling Chentis to enter into the plea agreement. As

---

[3] Chentis suggests that *Kabat v. State*, 76 Wis. 2d 224, 251 N.W.2d 38 (1977), nonetheless controls because the defendant there had admitted to previously using the pipe to smoke marijuana. *See id.* at 226. Accordingly, Chentis argues that the evidence of his recent drug use is of no significance. There was no evidence in *Kabat*, however, to suggest that the defendant's drug use had been recent. Rather, Kabat's admitted use had occurred approximately two weeks prior to the date of his alleged possession offense, and he testified he had cleaned the pipe in the interim. *Id.* at 226.

Chentis acknowledges, this argument operates from the premise that the heroin residue was, as a matter of law, insufficient to supply a factual basis for his plea. Because we have concluded otherwise, we will not further consider Chentis's ineffective assistance claim.

*By the Court.*—Judgment and order affirmed.