**COURT OF APPEALS
DECISION
DATED AND FILED**

**May 20, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.**     **2022AP1927-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CF70

**IN COURT OF APPEALS
DISTRICT III**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

KELSY R. WOOLDRIDGE,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Barron County: MAUREEN D. BOYLE, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1     HRUZ, J.     Kelsy R. Wooldridge appeals a judgment of conviction for possession of methamphetamine, arguing that there was insufficient evidence presented at trial to convict her. Wooldridge asserts that while the State presented evidence showing that law enforcement discovered a small amount of

methamphetamine residue in a bloody syringe in Wooldridge's purse, no evidence supported the jury's determination that she knew or believed that the syringe contained methamphetamine at that time. For the reasons that follow, and consistent with **Kabat v. State**, 76 Wis. 2d 224, 251 N.W.2d 38 (1977), we agree with Wooldridge. We therefore reverse the judgment of conviction and remand to the circuit court with instructions that a judgment of acquittal be entered.

## BACKGROUND

¶2 The following facts are taken from the evidence presented at Wooldridge's jury trial. While many of the relevant facts appear to be uncontroverted on appeal, where necessary, and consistent with our standards of review, we present the evidence adduced at trial "in the light most favorable to the State." *See* **State v. Smith**, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. In that regard, and based on the State's trial and appellate arguments, we submit that the facts presented below include all of those that could support the jury's guilty verdict.[1]

¶3 On April 13, 2020, Officer Sawyer Prinsen conducted a traffic stop of a vehicle registered in Wooldridge's name, but in which she was a passenger at the time. Although Prinsen approached the driver's side of the vehicle, he testified that he observed that Wooldridge had a shaky voice, did not make eye contact with him, was fidgeting, and was holding a black purse on her lap. He eventually asked

---

[1] Because Wooldridge only challenges the sufficiency of the evidence to support a finding that she knew or believed that the substance in the syringe was methamphetamine, we do not outline all the trial evidence regarding the testing of the substance at issue. In addition, other than perhaps the syringe itself, none of the admitted exhibits bear upon the issues on appeal; they relate only to the chain of custody and testing of the syringe by the Wisconsin State Crime Laboratory. There were no available body or squad camera videos.

Wooldridge to exit the car, which she did, and she then consented to Prinsen searching the vehicle.

¶4 Officer Prinsen testified to the events that followed. First, as part of the vehicle search, Prinsen looked in Wooldridge's purse where he found a syringe that "had a bloody substance inside the tube and on the point of the needle." When Prinsen found the syringe, the plunger was pushed down and he observed what he described as "bloody residue." He clarified that "residue" generally means a small, or "left over," amount. There was no clear liquid inside the syringe. Prinsen also testified that he was unable to tell what substance was in the syringe just by looking at it.

¶5 Prinsen then walked over to Wooldridge, showed her the syringe, and told her that he found it in her purse, after which she nodded. At no point did Wooldridge suggest that the syringe belonged to someone else or that she had a medical reason to possess it. Prinsen then asked Wooldridge if she had used methamphetamine, and she "acknowledged that she did," with the most recent time being "[a]pproximately one week prior." Prinsen did not ask Wooldridge if she had recently used the syringe, if she knew what was inside of it, or if she had put the syringe in her purse. After speaking with Wooldridge, Prinsen seized the syringe as evidence.[2]

¶6 Wooldridge did not testify at trial, and the two other witnesses largely testified regarding matters not relevant to the issue on appeal. The State's laboratory analyst, however, did testify that the syringe contained no weighable amount of

---

[2] According to the criminal complaint, a field test of the syringe "yielded a positive result for the presence of methamphetamine." However, there was no evidence presented at trial regarding the result of Officer Prinsen's field test of the syringe, only the fact that he conducted one.

liquid, but rather had only a reddish residue that she could not identify by sight, and that methamphetamine is not red in color. She also testified that, after performing several tests, she identified the presence of methamphetamine but she could not determine the specific amount that was present.

¶7 The circuit court instructed the jury on the elements of possession of methamphetamine, including that the State was required to prove: (1) Wooldridge possessed and had actual physical control of the substance; (2) the substance was methamphetamine; and (3) Wooldridge knew or believed that the substance was methamphetamine. The court also instructed the jury that it "cannot look into a person's mind to determine knowledge or belief. Knowledge or belief must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge or belief." *See* WIS JI—CRIMINAL 6030 (2024). The court further instructed that, in weighing the evidence, jurors "may take into account matters of your common knowledge and your observations and experience in the affairs of life"; that the jury's duty was "to scrutinize and to weigh the testimony of the witnesses and to determine the effect of the evidence as a whole"; and that the jury was "the sole judge[] of the credibility" or "believability of the witnesses and of the weight to be given to their testimony." *See* WIS JI—CRIMINAL 195 (2000); WIS JI—CRIMINAL 300 (2023).

¶8 The jury found Wooldridge guilty of possession of methamphetamine, after which the circuit court withheld sentence and placed Wooldridge on probation for one year. Wooldridge now appeals her judgment of conviction.

## DISCUSSION

¶9 On appeal, Wooldridge challenges the sufficiency of the evidence to support her conviction. It is beyond dispute that "[t]he burden of proof is upon the

[S]tate to prove every essential element of the crime charged beyond reasonable doubt." *State v. Robinson*, 2024 WI App 50, ¶51, 413 Wis. 2d 534, 12 N.W.3d 535 (second alteration in original; citation omitted). Either direct evidence or circumstantial evidence can establish evidence of guilt, and "the standard for reviewing the sufficiency of the evidence to support a conviction is the same in either a direct or circumstantial evidence case." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶10 "The question of whether the evidence was sufficient to sustain a verdict of guilt in a criminal prosecution is a question of law, subject to our de novo review." *Smith*, 342 Wis. 2d 710, ¶24. When conducting our review, "we consider the evidence in the light most favorable to the State," and we will "reverse the conviction only where the evidence 'is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" *Id.* (quoting *Poellinger*, 153 Wis. 2d at 507). In other words, we must "decide whether 'any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial.'" *Id.*, ¶44 (quoting *Poellinger*, 153 Wis. 2d at 506).

¶11 Wooldridge was convicted of unlawfully possessing methamphetamine, contrary to WIS. STAT. § 961.41(3g)(g) (2023-24). In order to obtain that conviction, the State was required to prove beyond a reasonable doubt that: (1) Wooldridge possessed the substance (here, methamphetamine); (2) the substance was a controlled substance and its possession is prohibited by law (methamphetamine was); and (3) Wooldridge knew or believed that the substance was a controlled substance. *See State v. Harris*, 190 Wis. 2d 718, 723, 528 N.W.2d 7 (Ct. App. 1994); WIS JI—CRIMINAL 6030 (2024).

¶12    Wooldridge's argument focuses on the knowledge or belief element of the offense. She asserts that "the State failed to present evidence on which any jury, acting reasonably, could find beyond a reasonable doubt that Wooldridge knowingly possessed methamphetamine." (Formatting altered.) In particular, Wooldridge contends that "a lay person," such as herself, "would not have known that the bloody residue in the syringe contained some unidentifiable amount of methamphetamine."

¶13    Case law has elaborated on the evidentiary standard for proving the knowledge or belief element of the charged crime. "To convict an individual of possession of a controlled substance, the prosecution must prove not only that the defendant was in possession of a dangerous drug but also that he [or she] knew or believed he [or she] was." *Kabat*, 76 Wis. 2d at 227. Stated differently, "the presence of the [controlled substance] [must be] reflected in such a form as reasonably imputed knowledge to [the defendant] that it was [that substance]." *Id.* at 228. Although there is no minimum amount of a controlled substance necessary to convict an individual of possession, "there must be sufficient facts to establish the defendant's knowledge of the character of the material in his or her possession." *State v. Chentis*, 2022 WI App 4, ¶¶9, 11, 400 Wis. 2d 441, 969 N.W.2d 482 (2021); *see also* *Poellinger*, 153 Wis. 2d at 508; *but see* *State v. Sartin*, 200 Wis. 2d 47, 61-62, 546 N.W.2d 449 (1996) (holding that the State was not required to prove that the defendant knew the exact nature or precise chemical identity of the substance). "[T]he awareness of the defendant of the presence of the [controlled substance], not scientific measurement and detection, is the ultimate test of the known possession of a [controlled substance]." *Kabat*, 76 Wis. 2d at 228 (citing *United States v. Jeffers*, 524 F.2d 253, 258 (7th Cir. 1975)).

¶14     Fortunately, juxtaposing the facts and analyses in *Poellinger*, *Chentis* and *Kabat* with the circumstances here helps to inform and clarify our analysis and conclusion that the State presented insufficient evidence to establish that Wooldridge knew or believed the syringe contained methamphetamine at the time of the traffic stop.  Importantly, the underlying theme in all of these cases is whether it is reasonable for a jury to infer, based on all the evidence and circumstances, that the defendant knew, or at least believed, that a controlled substance was present in the container in which it was found.

¶15     First, *Poellinger* involved a sufficiency of the evidence challenge to a conviction for possession of cocaine.[3]  There, the supreme court held that despite Poellinger's trial testimony that she believed the vial in her purse was empty and no longer contained cocaine at the time of her arrest, the evidence supported the jury's finding that she, in fact, knew or believed that the vial contained cocaine.  *Poellinger*, 153 Wis. 2d at 498-99, 509.  The evidence in that case included an analyst's testimony that he had observed a white powder residue on the threads of the vial holding the cap, as well as Poellinger's testimony admitting that the vial contained cocaine at one time.  *Id.* at 508.  The court held that the jury could properly conclude, based on "its experience in the affairs of life, that people usually look at a bottle when replacing its cap to obtain the proper alignment," and thus the jury "could reasonably infer that [Poellinger] looked at the vial when replacing its cap, saw the white powder residue on the threads holding the cap, and, therefore, knew

_____

[3] *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990), of course, is known in Wisconsin for its much cited and cogent analysis regarding the law applicable to a sufficiency of the evidence challenge to a criminal conviction.  In the years since its release, the opinion has been relied on in cases involving all types of criminal offenses.  It is not lost on this court, however, that *Poellinger* itself involved a dispute regarding evidence sufficient to find a person guilty of possessing an illegal drug/controlled substance under circumstances where that substance existed in a minimal amount and it was far from evident that the container holding that substance did, in fact, still contain it.

that there was cocaine residue on the vial at the time of her arrest." *Id.* at 509. The court further stated, "Alternatively, the jury could conclude that unless one takes extraordinary measures to remove the contents of a bottle after all usable amounts are gone, some of those contents will remain behind." *Id.* From there, the court concluded: "On the basis of this common knowledge, *together with* [*Poellinger's*] *admission that she knew that the vial contained cocaine at one time*, the jury could reasonably infer that [Poellinger] knew that the vial contained residual amounts of cocaine at the time of her arrest." *Id.* (emphasis added).

¶16 In *Chentis*, the defendant argued that there was an insufficient factual basis for his no-contest plea to possession of a narcotic drug because the State could only prove that he possessed a trace amount of heroin. *Chentis*, 400 Wis. 2d 441, ¶1. This court affirmed the conviction, noting that there was strong circumstantial evidence of Chentis's knowledge that a tin cooker found in his vehicle contained residual amounts of heroin. *Id.*, ¶¶2, 13. This evidence included the facts that the vehicle—which Chentis owned and drove—contained extensive amounts of various drug paraphernalia indicative of heroin use and that Chentis's arm had "fresh" track marks consistent with recent heroin use and a needle injection. *Id.*, ¶¶3, 13. The court also noted that "[t]here was no evidence to suggest Chentis had cleaned the tin cooker or would have had any other reason to believe drug residue would have been eradicated from it." *Id.*, ¶13.

¶17 Finally, in *Kabat*, which predated *Chentis* and *Poellinger*, the defendant challenged his conviction for possession of marijuana following a bench trial. *Kabat*, 76 Wis. 2d at 225. Law enforcement seized a pipe from Kabat's apartment, where he was having a party, and Kabat admitted the pipe was his. *Id.* at 225-26. Our supreme court overturned Kabat's conviction, holding that, "[u]nder the circumstances of the case[,] it [could not] be said that the presence of the

8

[controlled substance] was reflected in such a form as reasonably imputed knowledge to Kabat that it was marijuana." *Id.* at 228. In so holding, the court noted that the evidence consisted of a pipe that "contained less than one-half of a gram of ash material," which material the state's analyst characterized as "the residue left in the pipe after it had been smoked." *Id.* at 226, 228. The court concluded that "[a] lay person could not be expected to know whether the burnt material in the pipe still contained ingredients of the controlled substance." *Id.* at 229. In explaining this conclusion, the court did not reference Kabat's trial testimony that: (1) he had not used the pipe that evening and he had not used it since cleaning it a couple of weeks before the party; (2) he did not know that there was marijuana in the pipe that night because he had cleaned it; and (3) a couple of weeks before the party, he had used the pipe to smoke marijuana. *See id.* at 226.

¶18 We conclude that this case is more analogous to *Kabat* than either *Poellinger* or *Chentis*. Accordingly, we conclude that no trier of fact, acting reasonably, could have drawn the appropriate inferences from the evidence and found Wooldridge's guilt beyond a reasonable doubt.

¶19 Here, the State's principal fact was that bloody residue found on a used syringe in Wooldridge's purse subsequently tested positive for the presence of some unmeasurable amount of methamphetamine. Wooldridge made no admissions that she had used the syringe to consume methamphetamine or that she knew the syringe contained methamphetamine at any time. Law enforcement never asked her about these matters. While the bloody residue was certainly apparent to anyone, there was no evidence suggesting that Wooldridge knew it contained any methamphetamine at that time. Like the ash containing otherwise unobservable elements of marijuana in *Kabat*, the methamphetamine in this case was not present in such a form as to reasonably impute knowledge to Wooldridge that it was, in fact,

9

methamphetamine. The evidence established only that Wooldridge possessed a used syringe that, to the naked eye, contained only trace amounts of blood.

¶20 In this regard, Wooldridge appropriately emphasizes that the evidence established only two things. First, that a trace amount of *any* substance beyond the visible blood residue still existed in or on the syringe and, second, that no one— including a law enforcement officer and a state laboratory analyst—could visibly identify anything in the syringe that would appear to be a controlled substance of any type, including methamphetamine. The State presented no evidence regarding why, how, or for how long methamphetamine would remain in residue form in a syringe after it was used to inject someone with the drug. The lab analyst's skill in detecting what was otherwise unobservable cannot be the ultimate determination of Wooldridge's knowing possession of an unlawful substance. *See Kabat*, 76 Wis. 2d at 228. In these circumstances, the State did not present sufficient evidence to establish that a lay person would have known that the bloody residue in the syringe contained some unidentifiable amount of methamphetamine.

¶21 Further, the State presented little circumstantial evidence to support a reasonable finding of Wooldridge's knowledge that methamphetamine was in the syringe. For example, unlike what law enforcement observed in *Chentis*, Officer Prinsen did not observe any other evidence of recent drug use, such as Wooldridge's intoxication, fresh track marks on her skin, or other drug paraphernalia in the purse or in her vehicle. Similarly, unlike the white powdery substance visible on the vial threads in *Poellinger*, there was no visible amount of anything resembling methamphetamine on or in the syringe. Also, in contrast to the defendant in *Poellinger*, Wooldridge made no admissions to law enforcement that the syringe had contained methamphetamine. The circumstantial evidence in *Chentis* and *Poellinger* was crucial for the courts' conclusions that a reasonable inference could

10

be made that the defendants knew or believed a controlled substance was in the tin cooker and the glass vial in those cases, respectively. That evidence is missing here.

¶22    None of the foregoing analyses and conclusions are in conflict with our relevant standards of review,[4] and we find the State's arguments to the contrary unpersuasive. As the prosecutor urged the jury in his closing argument, the State on appeal asserts that "the jury properly inferred" that Wooldridge knew the bloody residue in the syringe was methamphetamine because it heard testimony that Wooldridge nodded when confronted by law enforcement with the syringe and because she admitted to using methamphetamine a week earlier.

¶23    We fail to see how those facts make the desired inference reasonable. The most probative value of the nodding response is that Wooldridge agreed that the syringe was in her purse at that time and even that it was hers. But those facts are not at issue, and they are of little relevance to the knowledge element of the crime of possession of a controlled substance. And, while we agree with the State that there was sufficient evidence for the jury to reasonably infer that Wooldridge did, at some point, use the syringe to inject methamphetamine into herself, that fact too fails to establish the knowledge element of the offense. Rather, the State needed

_____

[4] To be clear, we agree with the State's comprehensive presentation of the applicable legal standards to our review of the sufficiency of the evidence and the jury's verdict, as outlined in its brief. These include general sufficiency of the evidence standards, the law on what must be established for someone to be convicted of possessing a controlled substance, the domain of jurors, and how jurors are permitted to resolve factual disputes and reach a verdict. We simply disagree with the State's application of those standards under the circumstances of this case.

We further agree that the circuit court correctly instructed the jury, including on the well-established law that a jury must determine Wooldridge's knowledge or belief based on her acts, words or statements, and from all the facts and circumstances in this case bearing upon knowledge or belief, because jurors cannot look into Wooldridge's mind. *See supra* ¶7.

to prove that Wooldridge knew or believed that the syringe *still* contained methamphetamine at the time of the traffic stop.

¶24 Even accepting the notion that the jury rejected Wooldridge's answer to Officer Prinsen that her last use of methamphetamine was one week prior, but, rather, inferred that her last use occurred more recently, the evidence remains insufficient on the knowledge element. While all the evidence could reasonably establish that Wooldridge had used the syringe to inject herself with methamphetamine at some time, it does nothing to show that she knew or believed that any methamphetamine still remained in or on the syringe at the time of the traffic stop. All the State asserts on appeal in this regard is: "It defies common sense that an acknowledged user of methamphetamine would have a syringe in her purse that had been used to administer methamphetamine and would not know that traces of methamphetamine could be found in it." As we have already explained, we disagree. In any event, if the State's notion were valid, then ***Kabat*** would have been decided differently.

¶25 At best, the State's evidence would have allowed the jury to reasonably infer that Wooldridge knew that the syringe contained methamphetamine at some point in time. But ***Kabat*** instructs us that an individual cannot be convicted of possessing a controlled substance at a particular time when there is no evidence from which to reasonably infer that he or she knew or believed a substance that may have been previously used—and visually seemed to be depleted—remained in the container.[5] Said differently, "the amount and form of the substance found in the [syringe] is insufficient to impute to [Wooldridge]

---

[5] Indeed, the laboratory analyst testified that she could not even determine how much of the blood residue was actually methamphetamine.

knowledge that the substance contained" methamphetamine. *See Kabat*, 76 Wis. 2d at 229.

¶26 While a jury is not required to accept inferences not supporting guilt, it still must "reject evidence and testimony suggestive of innocence" "within the bounds of reason." *Poellinger*, 153 Wis. 2d at 503, 506 (emphasis omitted). It is precisely for cases such as this one, and *Kabat*, that the knowledge element exists in order to properly convict an individual of a drug possession crime.

¶27 For the foregoing reasons, the State failed to present evidence from which a jury, acting reasonably, could find beyond a reasonable doubt that Wooldridge knowingly possessed methamphetamine. In particular, the evidence was insufficient to support the necessary finding that Wooldridge knew or believed that the syringe contained any methamphetamine on April 13, 2020—that is, when she was found possessing the syringe that ultimately tested as containing an unmeasurable amount of methamphetamine. The State therefore failed to meet its burden, as a matter of law. Accordingly, we reverse Wooldridge's judgment of conviction, and we remand to the circuit court with instructions that a judgment of acquittal be entered.

*By the Court.*—Judgment reversed and cause remanded with directions.

Not recommended for publication in the official reports.